Janet Woodcock SIMON, Individually and as Administratrix of the Estate of Michael T. Simon, deceased and as Guardian of Stephanie Michelle Simon, Minor, Appellant,

v.

CONTINENTAL INSURANCE COMPANY, Appellee.

Supreme Court of Kentucky.

Dec. 18, 1986.

Rehearing Denied March 12, 1987.

Whayne C. Priest, Jr., English, Lucas, Priest & Owsley, Bowling Green, for appellant.

Penny Travelsted, Milliken & Milliken, Bowling Green, for appellee.

LEIBSON, Justice.

This is a dispute over what underinsured motorists benefits were provided by an automobile insurance policy issued by the Continental Insurance Co. to Michael and Janet Simon, his wife.

Michael Simon was killed, and their daughter, Stephanie, was seriously injured in a motor vehicle accident occurring October 9, 1981 in Edmonson County. The driver of the offending vehicle was Earl Page. His liability insurance coverage provided only the minimum limits for bodily injury then required by law, $10,000 per person and $20,000 per accident. KRS 304.39–110 (1976).

Janet Simon was awarded judgment against the tortfeasor, Page, in the sum of $104,023 as administratrix of her deceased husband's estate and $40,000 as guardian for Stephanie. Page's insurance carrier promptly paid Page's liability limits, $10,000 on each claim, leaving an unpaid judgment balance of $94,023 owed to the estate and $30,000 owed to Stephanie. Janet Simon had also filed an underinsured motorist claim against the Simons' own automobile insurer, Continental Insurance Co. This claim had been held in abeyance until Page's liability insurance carrier paid its limits.

The Simons' automobile insurance policy with Continental provided coverage for "LIABILITY TO OTHERS" listed on the face sheet (Declarations Page 1) as "Each occurrence, $100,000." The face sheet also listed "PROTECTION AGAINST UNINSURED MOTORISTS," "Each person, $10,000/Each accident, $20,000." Page 2 of the Declarations specified that the insured had purchased "UNDERINSURED MOTORISTS INS" as well as "UNINSURED" coverage, but the Declarations failed to specify any separate amount of coverage for underinsured (as opposed to uninsured) coverage. Further, the face sheet failed to

itemize the premiums paid for the various coverages, instead specifying only a lump sum for premiums for the various coverages provided, which was $652 per year.

KRS 304.39–320, which is part of the Motor Vehicle Reparations Act, requires that "Every insurer shall make available upon request to its insureds underinsured motorist coverage. . . ." It is conceded that the insured requested for and paid for such coverage, but the evidence does not show the amount of underinsured motorist coverage that was asked for and paid for, and we cannot determine this by looking at the Declaration pages in the policy.

The insurer, Continental Insurance Company, claims that the amount of the coverage can be divined by looking to the language of "Section IV" of its policy, that its liability for underinsured motorist coverage is coextensive with its liability for uninsured motorist coverage, and that the limit for both is $10,000/$20,000, the amount listed on the face sheet of the policy as the limit of liability for "UNINSURED MOTORISTS" coverage.

On the other hand, the insured, Simon, contends that the amount of coverage should be determined by looking at the language of the Underinsured Motorist section of the Motor Vehicle Reparations Act, KRS 304.39–320, and that the Act requires that underinsured motorist coverage must be coextensive with the insured's liability policy limits, in this case $100,000. The insured concedes that under our decision in *LaFrange v. United Services Auto. Ass'n.*, Ky., 700 S.W.2d 411 (1985), the liability limits in the tortfeasor's policy, in this case a total of $20,000, must be offset against the underinsured motorist coverage provided by the insured's policy. The insured contends that this leaves a balance of $80,000 due and owing from Continental Insurance Co.

The trial court resolved this dilemma in favor of the insured, and awarded summary judgment against the insurer in the sum of $80,000, pro rated 75% (or $60,000) to the Estate of Michael Simon and 25% (or $20,000) to the plaintiff as Guardian of her injured daughter.

However, the Court of Appeals reversed, holding that the Underinsured Motorists statute does not require that underinsured motorist coverage be provided in the same amount as the coverage provided to the insured for liability to others, and that the policy itself, when considered in its entirety, was written to provide coverage only in the same amount as the uninsured motorist coverage, $20,000. Thus, under the Court of Appeals' decision, although the tortfeasor, Page, had only the minimum liability insurance coverage required by law, the insured's underinsured motorist coverage was limited to the same amount. The insured was left a "balance of zero." We have accepted discretionary review of the Court of Appeals' decision, and reverse it.

There are two questions raised by this appeal. One is a matter of statutory construction and the other is a matter of policy construction. The insured is entitled by law to a favorable construction of both the statute and the policy if there is any doubt about whether coverage is provided: the statute because it is "remedial legislation which should be generally construed to accomplish its stated purposes," and the insurance contract because it is "a contract of adhesion (wherein) any ambiguity in the contract language will be construed against the insurer who prepares it." *LaFrange v. United Services Auto. Ass'n, supra* at 413.

As to the statute, the question presented is whether the statutory obligation placed upon the insurer to provide underinsured motorist coverage, if requested, "to the extent of the policy limits on the vehicle of the party recovering," refers to the limits provided for liability to others in the policy, or whether when underinsured motorist coverage is requested the insurer may sell coverage in an amount less than the liability coverage in the policy.

Minnesota had an underinsured motorist statute similar in every respect to our Kentucky statute except that it solved the question presented by qualifying the phrase "to the extent of the policy limits on the vehicle of the party recovering" with "or such smaller limits as he may select."

Minn.St. 1971, § 65B.26(d). Because we resolve this case on the second question, the question of policy construction, the difference in result, if any, which should flow from this statutory variation, is a question which is reserved for another day.

The second question is whether the policy language should be construed as expressly limiting underinsured motorist coverage to $20,000, the amount stated for "uninsured motorist" coverage in the policy's Declarations, or whether the policy should be construed in the broader context of the limits provided for liability coverage, $100,000. We believe, for reasons that will be stated, that when both the manner in which the policy is structured and the reasonable expectations of the insured are considered, the policy is ambiguous and the insured is entitled to have the ambiguity resolved against his insurance company. This means that the trial court's summary judgment in favor of the insured should be upheld for reasons of policy construction, and we do not reach the larger question of whether the language of KRS 304.39–320 mandates that the amount of underinsured motorist coverage will be coextensive with the limits of the insured's liability to others coverage in those cases where it is clear from the policy that the insured requested and paid for underinsured motorist coverage in a lesser amount.

Although the Declarations section of the policy fails to provide any limits for underinsured motorist coverage, Continental insists that Section IV of the policy covers this deficiency. Section IV, which provides for uninsured motorist insurance, refers to underinsured motorist insurance in two instances, but, to say the least, these references are confusing.

The first reference is in the title, next to the word "uninsured." The word "underinsured" appears placed in parenthesis without explanation. Underneath the title, in the heading, both italicized and emphasized, the policy states:

"THIS SECTION DEALS WITH THE PROTECTION AFFORDED WHEN AN UNINSURED MOTORIST IS LEGALLY LIABLE FOR BODILY INJURY SUSTAINED BY A PERSON INSURED UNDER THIS SECTION."

The second reference to "underinsured" is buried in a lengthy "DEFINITIONS" section. It states that " 'uninsured highway vehicle' includes an underinsured highway vehicle." This sentence can be best described as an "oxymoron," a combination of incongruous words, because the word "uninsured" by any normal definition would necessarily *exclude* "underinsured" as a contradiction in terms.

The insurer's contention is that the insured requested and paid for, and was provided, underinsured motorist coverage which was essentially coextensive with his uninsured motorist coverage; i.e., it provided no additional benefits. The examples provided to suggest the possibility of benefits were so tenuous and conjectural that they were meaningless for all intents and purposes. An offending motorist either would have been uninsured or would have had liability insurance to the extent of $10,000/$20,000, because this was the minimum limits then required by law. We do not accept as a fact that the parties, in good faith, intended to bargain for insurance that paid no benefits.

An essential tool in deciding whether an insurance policy is ambiguous, and consequently should be interpreted in favor of the insured, is the so-called "doctrine of reasonable expectations." This is a principle abstracted from numerous cases and first elaborated by Prof. Robert Keeton in his *Basic Text of Insurance Law*, § 6.3(a), at 351 (1971). *See Ohio Cas. Ins. Co. v. Stanfield*, Ky., 581 S.W.2d 555, 558 (1979). The nature of the doctrine of reasonable expectations is summarized in R.H. Long's *The Law of Liability Insurance*, § 5.10B, which states, in pertinent part:

"The gist of the doctrine is that the insured is entitled to all the coverage he may reasonably expect to be provided under the policy. Only an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage will defeat that expectation.
. . . .

The doctrine of reasonable expectations is used in conjunction with the principle that ambiguities should be resolved against the drafter in order to circumvent the technical, legalistic and complex contract terms which limit benefits to the insured."

In 1 Corbin on Contracts, § 537, Prof. Corbin states that:

"The main purpose of Contract Law is the realization of reasonable expectations induced by promises."

As otherwise stated in *National Ins. v. Lexington Flying Club*, Ky.App., 603 S.W.2d 490, 493 (1980):

"An insurance contract must be construed according to its true character and purpose, and in accordance with the intentions and expectation interests of the parties. [Kentucky cases cited]."

Our most recent case on the point is *Fryman v. Pilot Life Ins. Co.*, Ky., 704 S.W.2d 205 (1986), holding that death by "accidental means" as used in an insurance policy must be interpreted as "generally understood" by the purchasing public.

When considered from the standpoint of:

(a) a face sheet that provides limits for uninsured motorist coverage but omits limits for underinsured motorist coverage;

(b) a section in the policy on uninsured motorist insurance which mentions "underinsured" but only in limited and confusing terminology; and

(c) the reasonable expectations of an insured which would accompany the purchase of underinsured motorist coverage absent "an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage" (*Long, supra*); this policy must be viewed as ambiguous and the coverage unlimited except to the extent that the insured knows he has purchased automobile liability insurance limited to $100,000. The insured had the right to expect that he had underinsured motorist coverage to the extent of $100,000, less the offset from the tortfeasor's liability coverage.

We do not reach the question of whether, because of the statutory language in KRS 304.39–320, underinsured motorist coverage must be construed as coextensive with the policy's liability coverage limits in those cases where the policy plainly and conspicuously identifies that the insured requested, paid for, and was provided coverage for underinsured motorist coverage in an amount less than the liability limits provided by the policy.

The decision of the Court of Appeals is reversed. The judgment of the trial court is affirmed.

VANCE, WHITE and WINTERSHEIMER, JJ., concur.

STEPHENSON, J., dissents by separate opinion in which STEPHENS, C.J., and GANT, J., join.

STEPHENSON, Justice, dissenting.

The face of the policy here, styled "Limits of Liability," provides $10,000 and $20,000 on Section IV, Uninsured Motorists. Section IV of the policy is headed in large letters "UNINSURED (and underinsured) MOTORISTS INSURANCE." This would lead any reasonable person to conclude that the heading means what it says, i.e., the terms for the purposes of this policy mean the same. On the second page of Section IV, under "Definitions," there is a part headed " 'uninsured highway vehicle' includes an underinsured highway vehicle." Section IV is relatively brief and to the point. To anyone who reads his policy, it is perfectly clear.

The trial court held that the limits on uninsured (underinsured) coverage in the policy violated the statute which mandates this coverage to be the liability limits of the policy. The Court of Appeals held this to be error, that all the statute means is that the policyholder is *permitted* to purchase this coverage to the extent of the liability limits of the policy. The briefs here argue the interpretation of the statute. The trial court and the Court of Appeals seemed to think that the terms of the policy were clear and easily understood, and that "uninsured and underinsured" were given the same meaning. The policyholder here asks only that we hold that the statute means

that underinsured coverage must equal the insured's liability policy limits.

Undaunted by all of this, the majority reserves this issue to another day and charges off on the esoteric principles of ambiguity and reasonable expectations.

It would seem reasonable to me to go ahead and answer the issue presented to us. Of course, it is clear to me that the Court of Appeals opinion is exactly right, that for this coverage the policyholder gets exactly what he pays for. The only reasonable interpretation of the statute is that the policyholder can purchase this coverage up to the limits of the policy. It is absurd to think that the language of the statute *mandates* coverage to the limits of the liability policy.

In my view, the policyholder's reasonable expectations are to receive the coverage paid for. I suppose that the majority had to conjure up ambiguity in order to justify the holding. There is no ambiguity here. The plain headings and definitions in Section IV support the limits recited on the face of the policy. The majority rewrites the policy to achieve a desired result.

I would affirm the decision of the Court of Appeals.

STEPHENS, C.J., and GANT, J., join in this dissent.