**Nelva ROY, Administratrix of the Estate of W.T. Roy, deceased; Raymond Tarter; and Nelda Tarter, Plaintiffs–Appellants,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and Capital Enterprise Insurance Company, Defendants–Appellees,**

**David Birchfield and Warren Goode, Defendants.**

No. 89–5625.

United States Court of Appeals, Sixth Circuit.

Argued June 7, 1991.

Decided Jan. 22, 1992.

Rehearing Denied Feb. 26, 1992.

Richard Hay (argued and briefed), Somerset, Ky., for plaintiffs-appellants.

David Birchfield, pro se.

John F. Kelley, Jr. (argued and briefed), J. Warren Keller, Farmer, Keller & Kelley, London, Ky., Gary Garrison, James C. Hickey (briefed), MacKenzie & Peden, Louisville, Ky., for defendants-appellees.

Larry Deener, Landrum & Shouse, Lexington, Ky., for defendants.

Before JONES and NELSON, Circuit Judges, and PECK, Senior Circuit Judge.

DAVID A. NELSON, Circuit Judge.

This litigation arises out of a head-on motor vehicle collision in which one of the drivers was killed and his passenger and the other driver were seriously injured. The decedent's administratrix and the injured passenger and his wife have sued their own automobile insurance carriers. The plaintiffs contend that their policies entitle them to be paid for their uncompensated damages because, although the driver who caused the accident had the minimum liability coverage required by state law, the owner of the vehicle he was operating had no liability coverage.

The validity of the plaintiffs' contentions turns on the answers to two questions. The first is whether, under applicable state law, the offending vehicle was "uninsured" notwithstanding that its driver had liability coverage. The second is whether one of the defendant insurance companies wrote "underinsured" motorist coverage for more than the liability coverage of the driver of the offending vehicle.

Answering both questions in the negative, the district court entered summary judgment in favor of the insurance companies. Upon review of the record *de novo*, we conclude that the district court reached the correct result; we shall therefore affirm the judgment.

## I

The accident occurred on November 7, 1987, on a state highway in Kentucky. A Ford pickup truck driven by defendant Warren Goode, who was 16 years old at the time, skidded out of control, crossed the center line, and crashed into an oncoming Chevrolet pickup truck. The driver of the Chevrolet, Mr. W. T. Roy, was killed; his passenger, plaintiff Raymond Tarter, was injured, as was young Goode.

The Ford was owned by defendant David Birchfield, a resident of the State of Georgia. Goode, also a resident of Georgia, was driving the vehicle with Birchfield's permission. Goode had no driver's license.

Although Mr. Birchfield did not carry liability insurance on the Ford, Warren Goode had liability insurance coverage under a policy issued to his mother by Dairyland Insurance Company. The stated limits of the Dairyland policy were $15,000 for each person injured, subject to a limit of $30,000 per accident. Kentucky's Motor Vehicle Reparations Act imposes a minimum insurance requirement that can be fulfilled by "split limits" liability coverage of not less than $25,000 for bodily injury sustained by any one person and not less than $50,000 for injuries sustained by all persons injured in any one accident. Ky. Rev.Stat. 304.39–110. Dairyland was qualified to do business in Kentucky, and notwithstanding its stated policy limits of $15,000/$30,000, it acknowledged that during the time Warren Goode was driving Mr. Birchfield's vehicle in Kentucky, Dairyland furnished liability coverage meeting the Kentucky minimum of $25,000/$50,000.

The decedent, Mr. Roy, carried bodily injury liability insurance of $200,000/$500,000 on his Chevrolet pickup. Included in Mr. Roy's policy, which was issued by defendant State Farm Mutual Automobile Insurance Company, was uninsured motor vehicle bodily injury coverage (described in the policy as "Coverage U") in the amount of $25,000 for each person and $50,000 for each accident.

Mr. Tarter, the passenger in the Roy vehicle, carried automobile liability insurance under a policy issued by defendant Capital Enterprise Insurance Company. This policy also included uninsured vehicle coverage, the precise wording of which differed somewhat from that in the State Farm policy.

Following the appointment of Mr. Roy's widow, Nelva Roy, as administratrix of Mr.

Roy's estate, Mrs. Roy brought a federal court diversity action against Birchfield, Goode, and State Farm. The complaint charged Goode with negligent driving. Birchfield was charged with negligence in having entrusted the operation of his vehicle to an unlicensed and incompetent driver and with having allowed the driver to operate the vehicle contrary to statute.

The substance of Mrs. Roy's claim against State Farm was that the company had written *uninsured* motorist coverage of $25,000/$50,000 under which it was jointly liable for any judgment obtained against Birchfield and Goode; that State Farm had also provided *underinsured* motorist coverage in an amount not specified in the policy, but which Mr. and Mrs. Roy reasonably expected to be $200,000 per person and $500,000 per occurrence; and that State Farm was jointly liable for any judgment against Birchfield and Goode not only under this coverage, but also under uninsured and underinsured motorist coverages said to have been included in four additional liability insurance policies issued to Mr. Roy on vehicles not involved in the accident.

Mr. Tarter and his wife sued Birchfield, Goode, State Farm and Capital Enterprise in a Kentucky state court, alleging among other things that the Tarters were additional insureds under Mr. Roy's State Farm policy and that they had uninsured motorist coverage under the policy issued to them by Capital Enterprise. The Tarter lawsuit was removed to federal court on diversity grounds, and was consolidated there with the case brought by Mrs. Roy.

Defendant Birchfield, the owner of the Ford pickup, failed to enter an appearance, and the district court eventually entered a default judgment against him. The judgment related to liability only; the quantum of damages remained to be determined.

Following discovery proceedings, cross-motions for summary judgment were filed by the plaintiffs and the insurance companies that had been joined as defendants. The district court (Siler, C.J.) granted summary judgment in favor of the insurance companies. Relying on *Commonwealth*

*Fire and Casualty Ins. Co. v. Manis,* 549 S.W.2d 303 (Ky.Ct.App.1977), Judge Siler concluded that because the driver of the Ford pickup had liability insurance coverage meeting the statutory minimum, the truck was not "uninsured." Accordingly, neither State Farm nor Capital Enterprise owed anything pursuant to what the complaints called "uninsured motorist" coverage. With respect to the "underinsurance" claims against State Farm, Judge Siler found that Mr. Roy had selected underinsured motorist coverage limits in the amount of $25,000/$50,000; because liability coverage was available in that amount under the Dairyland policy, Judge Siler held, the plaintiffs could not recover against State Farm.

Subsequent to the entry of summary judgment, Dairyland paid $25,000 to Mrs. Roy and $25,000 to Mr. and Mrs. Tarter, thereby exhausting its adjusted policy limits. The plaintiffs' claims against Warren Goode were dismissed as settled, and State Farm and Capital Enterprise waived any subrogation rights they might have had against Goode. Although the damages owed by Mr. Birchfield were still undetermined, Judge Siler directed the entry of a final judgment in favor of State Farm and Capital Enterprise. Pursuant to Rule 54(b), Fed.R.Civ.P., the judge expressly determined that "there is no just reason for delay." Mrs. Roy and Mr. and Mrs. Tarter then perfected this appeal.

## II

■ Although only one pickup truck jumped the center line, there were two putative tortfeasors—the driver of that truck and its owner. The owner had no liability insurance, but the driver had liability coverage for the full amount mandated by Kentucky law. The first question we must decide, under these circumstances, is whether the offending truck was an "uninsured motor vehicle" within the meaning of that term as used in either the Capital Enterprise policy issued to the Tarters or the State Farm policy issued to Mr. Roy.

Part C of the Tarters' policy, captioned "Uninsured Motorists Coverage," obligated

Capital Enterprise to "pay damages which a covered person [*i.e.*, a person insured under the Capital Enterprise policy] is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury." The term "uninsured motor vehicle" was defined as including a motor vehicle "[t]o which no bodily injury liability bond or policy applies at the time of the accident," or to which there applies a policy with a "limit for bodily injury liability ... less than the minimum limit ... specified by the financial responsibility law of the state in which your covered auto is principally garaged." Part C of the Tarters' policy met the requirements of Ky.Rev.Stat. 304.20–020, under which motor vehicle liability policies issued for delivery in Kentucky must include uninsured vehicle coverage of this type unless the named insured has rejected the coverage.

The language of the Tarters' Capital Enterprise policy was apparently identical to that in the Commonwealth Fire and Casualty Insurance Company policy at issue in *Commonwealth Fire and Ins. Co. v. Manis*, 549 S.W.2d 303, *supra*. The appellate brief filed by Capital Enterprise in the case at bar represents, without contradiction, that "Capital Enterprise is the same company as Commonwealth Fire and Casualty and only the name change distinguishes the policy language in this case from the policy language considered in *Manis*." .

The facts of *Manis* are on all fours, in every significant respect, with the facts of this case. The plaintiff in *Manis* was injured in a Kentucky automobile accident caused by a 16 year-old driver. (The accident in *Manis* involved only a single vehicle, but the absence of a second vehicle merely simplifies the analysis; it does not affect the outcome in any way.) The owner of the *Manis* vehicle carried no insurance, but the driver had liability coverage under a policy issued to one of his parents. The coverage met the minimum level required under Kentucky law. The plaintiff, a passenger, had what the Kentucky court described as "standard uninsured motor vehicle coverage" under a policy issued by Commonwealth to her parents. She sued Commonwealth under the uninsured vehicle coverage of her parents' policy.

Speaking for a unanimous Kentucky Court of Appeals panel that included Chief Judge Boyce Martin, who is now a member of our court, the author of the *Manis* opinion (Judge Roy Vance, who was to become a member of the Supreme Court of Kentucky) expressed agreement with Commonwealth's contention that it owed nothing under its uninsured motor vehicle coverage "for the simple reason that the automobile operated by [the 16 year-old] was an insured vehicle." *Id.* at 305. Judge Vance's opinion in *Manis* continued as follows:

> "It is true the vehicle was not insured by its owner but the insurance coverage of the operator provided the minimum coverage required by KRS 304.20–020. We think the purpose of uninsured motor vehicle coverage is to make available to injured parties from their own insurers a stated minimum amount of insurance coverage when no other valid or collectible insurance exists with respect to the vehicle causing the damage. That situation does not obtain here." *Id.*

Citing *Manis*, Judge Siler declared in the case at bar that "the law in Kentucky is that a vehicle is insured if either the owner or operator has applicable insurance." Applying this law to the case at hand, Judge Siler held that "[a]s the driver of the Birchfield vehicle has applicable insurance, the Birchfield vehicle was insured, and plaintiffs cannot collect from their own insurers under an uninsured motorist clause."

■ The plaintiffs have attempted to distinguish *Manis* on various grounds, including the fact that the case was decided prior to the decision in *Simon v. Continental Ins. Co.*, 724 S.W.2d 210 (Ky.1986), where the Kentucky Supreme Court explicitly endorsed the "doctrine of reasonable expectations." *Id.* at 212–213. But *Manis* is entirely consistent with the doctrine of reasonable expectations—and *Manis* had already been on the books for about a decade when the plaintiffs obtained the insurance policies at issue here. It would hardly have been reasonable for the plaintiffs to expect their policies to be interpreted in a

manner diametrically opposed to the only published Kentucky decision in point.

There is nothing in the language of the State Farm policy to suggest that the *Manis* court would have reached a different result if it had been looking at the form of policy used by State Farm rather than the form used by Commonwealth/Capital Enterprise. "Coverage U" of the State Farm policy defines "uninsured motor vehicle" as including a vehicle the ownership, maintenance, or use of which either is not insured for bodily injury at all, or is insured for bodily injury at liability limits less than those required by the financial responsibility act of the state where the named insured's vehicle is mainly garaged. We see no material difference between this definition and that in the Capital Enterprise policy.

But if *Manis* cannot be distinguished, the plaintiffs argue that the decision is "110% wrong." The plaintiffs stress, among other things, that Ky.Rev.Stat. 304.99–060 provides for the imposition of criminal penalties against *"the owner* of any vehicle who fails to have in full force and effect the security required by subchapter 39 ...." (Emphasis supplied.) What subchapter 39 requires of *owners* of vehicles registered outside the Commonwealth of Kentucky, as Mr. Birchfield's vehicle was, is that such owners "shall provide [insurance or other security] *while operating* a motor vehicle in this Commonwealth." (Emphasis supplied.) Whether the owner of an out-of-state vehicle must provide insurance while someone other than the owner is operating · the vehicle in the Commonwealth is a question the parties have not addressed, and there is no need for us to consider it. If Mr. Birchfield was in fact obligated by Kentucky law to provide insurance for the minimum amount of $25,000/$50,000 while Goode was operating the Birchfield vehicle in Kentucky, the fact that such insurance was provided by Goode rather than Birchfield would hardly mean that the vehicle was uninsured.

It is true that Ky.Rev.Stat. 304.20–020, which requires that Kentucky policies include uninsured vehicle coverage unless the named insured rejects such coverage, describes the mandated coverage in terms of "coverage ... for the protection of [insured] persons ... who are legally entitled to recover damages from owners or operators of uninsured *motor vehicles....*" (Emphasis supplied.) The catchline for this section of subchapter 39 uses the words "[u]ninsured vehicle coverage," and the plaintiffs suggest that because it is the responsibility of the owner to provide the insurance, a vehicle cannot be insured if its owner is not insured.

Again we are not persuaded. In the present context, at least, liability insurance provides indemnification for people, not objects. It is not a logical necessity that a vehicle be treated as "uninsured," from the standpoint of an accident victim, if the insurance company by which the victim will be paid pursuant to the company's indemnification responsibility happens to have promised to indemnify the driver and not the owner.

We acknowledge, of course, that although the panel that decided *Manis* was a distinguished one, it was not Kentucky's highest court. Under *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), it is our duty in a case such as this to apply the law of the forum state as we believe the Supreme Court of the state would apply it. Because the Supreme Court of Kentucky has not decided the question before us here, we look to other available data, including decisions of Kentucky's lower courts. "[A] federal court is not bound by lower court determinations if convinced by other data that the state's highest court would determine otherwise," *Bailey v. V & O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir.1985), but we have seen no other data that convince us that the Supreme Court of Kentucky would repudiate *Manis* if given the opportunity to do so. We are satisfied that Judge Siler did not err in accepting *Manis* as good law in Kentucky.

### III

The remaining question is whether Mr. Roy purchased an unspecified amount of

"underinsured motorist coverage" from defendant State Farm separate and apart from the $25,000/$50,000 coverage he had under the section of the policy designated "Coverage U." The question is complicated somewhat by the fact that the uninsured vehicle coverage must, by statute, contain an element of underinsured motorist coverage. Once the significance of this fact is understood, we think the question becomes a relatively easy one to answer.

It is Ky.Rev.Stat. 304.20–020(1) that requires motor vehicle liability insurance policies issued for delivery in Kentucky to include uninsured motor vehicle coverage. Subsection (2) of this statute goes on to make it clear that for purposes of the required coverage, the term "uninsured motor vehicle" is not limited to vehicles with respect to which there is no liability coverage at all; under subsection (2), the term "uninsured motor vehicle" is also deemed to include "an *insured* motor vehicle with respect to which the amounts [of bodily injury liability insurance] provided ... are less than the limits described in KRS 304.-309–110 [*i.e.*, $25,000/$50,000]...." (Emphasis supplied.)

The uninsured motor vehicle coverage included in the Roys' State Farm policy—"Coverage U"—complies with Ky.Rev.Stat. 304.20–020 to the letter. Under Coverage U, State Farm promises to pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle—and, as noted above, the policy goes on to say that "uninsured motor vehicle" means not only a vehicle the ownership, maintenance or use of which is not insured for bodily injury at all, but also a vehicle the ownership, maintenance or use of which is insured for bodily injury at liability limits less than required by the applicable financial responsibility act. The furnishing of "uninsured" motor vehicle coverage where a vehicle is *underinsured* in this way is precisely what is required by Ky.Rev.Stat. 304.20–020(2).

But coverage whereby a policyholder's own insurance company promises to pay him for damages caused by a vehicle insured for less than the statutory minimum of $25,000/$50,000 is not the only type of "underinsured" coverage available in Kentucky. Ky.Rev.Stat. 304.39–320, captioned "Underinsured motorist coverage," gives the Kentucky policyholder the option of buying coverage that obligates the policyholder's own company to make payment on an unsatisfied judgment recovered by the policyholder against the owner of a vehicle that may be insured for more than $25,000/$50,000, but that is not insured for the full amount of the judgment. Coverage purchased under Ky.Rev.Stat. 304.39–320 obligates the policyholder's own insurance carrier to make payment on the judgment "to the extent of the policy limits on the vehicle of the party recovering [the judgment] less the amount paid by the liability insurer of the party recovered against," regardless of how the policy limits of the party recovered against compare with the statutory minimum limits.

■ Every Kentucky policyholder obtains the relatively modest uninsured/underinsured coverage described in Ky.Rev.Stat. 304.20–020 unless he opts out of such coverage by rejecting it in writing. To obtain the potentially more extensive underinsured motorist coverage described in Ky.Rev.Stat. 304.39–320, by contrast, the policyholder must opt in to the coverage. Under 304.39–320, the insurer is required only to "make [such coverage] available *upon request.*" (Emphasis supplied.)

■ At the time Mr. and Mrs. Roy applied to defendant State Farm for insurance on the Chevrolet truck in which Mr. Roy was subsequently killed, Mrs. Roy signed a State Farm form known as a "coverage selection or rejection form." This form contained a paragraph explaining the statutory requirements,[1] following

---

1. The explanation read as follows:
   "Kentucky law requires that all motor vehicle liability insurance policies contain Uninsured Motorist Coverage for the protection of persons insured who are legally entitled to recov-

   er damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, disease or death. In addition, Kentucky law provides that every insurer shall make available underinsured motorist cover-

which the applicant was invited to check one of two boxes. The first box—which was checked by Mrs. Roy—accompanied a sentence reading as follows: "I have been given the option to purchase Uninsured Motor Vehicle Coverage including Underinsured Motorist Coverage, up to an amount equal to my auto bodily injury liability limits, and instead I select lower limits of $_____/$_____." The figure "25,000" was written by hand in the first of these blanks, and "50,000" was written in the second blank. The other option—not checked by Mrs. Roy—read as follows: "I have the right to reject Uninsured Motorist Coverage, and I reject such Coverage."

If Mrs. Roy had checked the second box, she would have been rejecting the uninsured vehicle coverage described in Ky. Rev.Stat. 304.20–020. By not rejecting it, of course, she automatically accepted it— and this is consistent both with the box she did check and with the face sheet ("declarations page") and policy booklet (State Farm Form 9817.2) which, together with a separate farm truck endorsement, made up the complete policy. The description of "Coverage U" in the policy booklet tells the insured that "[y]ou have this coverage if 'U' appears in the 'Coverages' space on the declarations page." The symbol "U" does in fact appear in a space marked "Coverages" on the declarations page of the Roy policy. A dollar figure next to the "U" indicates that the semiannual cost of the coverage was $4.00. A separate "limits of liability" section on the declarations page shows that the liability limits for Coverage U are $25,000 for each person and $50,000 for each accident.

We find nothing in the record of this case to suggest that Mrs. Roy or her husband elected to purchase any underinsured motorist coverage in addition to the underinsured motorist component included in their uninsured vehicle coverage of $25,000/ $50,000. Mrs. Roy expressly acknowledged that she had been given the option to purchase underinsured motorist coverage up to an amount equal to the Roys' bodily injury liability limits of $200,000/$500,000; that option was not exercised.[2] Instead, the Roys settled for uninsured/underinsured coverage that conformed precisely to the requirements of Ky.Rev.Stat. 304.20– 020 and that did not go above the minimum limits of $25,000/$50,000 set forth in Ky. Rev.Stat. 304.39–110.

The dollar limits of the coverage selected by the Roys were unambiguous, and it would turn the doctrine of reasonable expectations on its head if we were to hold that the underinsured motorist component in "Coverage U" had limits of $200,000/ $500,000 rather than the limits of $25,000/ $50,000 set forth on the face of the policy itself and in the coverage selection or rejection form signed by Mrs. Roy in applying for the policy. If Mr. Roy had bought a $25,000 life insurance policy, we would not, of course, require the insurance company to pay death benefits of $200,000. Nothing in the distinction between automobile insurance and life insurance could possibly justify our taking comparable liberties with the contract of insurance now before us.

Citing *LaFrange v. United Services Automobile Assn.,* 700 S.W.2d 411 (Ky. 1985), and *Simon v. Continental Ins. Co.,* 724 S.W.2d 210 (Ky.1986), the plaintiffs

age to pay insureds for uncompensated damages on account of injury due to a motor vehicle accident, when the judgment recovered against the owner of the other vehicle exceeds liability policy limits. This coverage pays up to the insured's uninsured motorist limits less the amount paid by the liability insurer of the party recovered against."

2. If Mrs. Roy had asked to buy underinsured motorist coverage for more than $25,000/ $50,000, State Farm would have complied with the request by the simple expedient of increasing the stated limits on Coverage U. Subsequent to the time period with which we are

concerned here, State Farm amended its policy language so that the underinsured motorist coverage described in Ky.Rev.Stat. 304.39–320 was provided under a separate section of the policy, rather than under the section used to provide the uninsured/underinsured coverage described in Ky.Rev.Stat. 304.20–020. This change in the form does not indicate in any way that policyholders who elected to take Coverage U in the amount of $25,000/$50,000 before the policy form was amended were thereby purchasing underinsured motorist coverage in a higher amount if the limits of their own liability coverage happened to be higher.

argue that because the State Farm policy purports to provide underinsured motorist coverage in the same amount as the minimum limits ($25,000/$50,000) established by Kentucky law for tort liability coverage, and because the uninsured vehicle coverage described in Ky.Rev.Stat. 304.20–020 provides benefits whenever a tortfeasor has liability insurance of less than $25,000/$50,000, "[t]he insurance company that sells underinsured motorist coverage in the amount of $25,000/$50,000 sells no coverage at all." The problem with this argument, as we see it, is that State Farm never sold the Roys any underinsured motorist coverage at all aside from that which was included in the uninsured vehicle coverage—and the limits of that coverage were exactly what Ky.Rev.Stat. 304.20–020(1) and 304.39–110 said they had to be. The $4.00 premium that the Roys paid for "Coverage U" gave them the precise mix of uninsured vehicle/underinsured motorist coverage mandated by Ky.Rev.Stat. 304.-20–020, and they paid nothing whatever for any additional underinsured motorist coverage. Much as we might like to do so, we cannot give the plaintiffs coverage they never bought and paid for.

If there were an ambiguity in the State Farm policy, of course, we could resolve it in favor of the insureds. That is what the Kentucky Supreme Court did in *Simon*, where the policy's declarations page showed that in addition to purchasing *uninsured* motorist protection of $10,000/$20,000 (the minimum liability limits at the time in question), the policyholder had *also* purchased an unspecified amount of *underinsured* motorist coverage. Because the limits of the additional coverage were not stated, and because Ky.Rev.Stat. 304.39–320 requires insurers to make underinsured coverage available "to the extent of the policy limits on the vehicle of the [policy-

holder] less the amount paid by the liability insurer of the party recovered against," the Kentucky court resolved the ambiguity by deciding that the policyholder's reasonable expectation would have been that he carried underinsured motorist coverage to the extent of his own liability limits ($100,000 in the *Simon* case), less the offset from the tortfeasor's liability coverage.[3]

The declarations page of the Roys' State Farm policy contains no ambiguity. Unlike the declarations page of the policy at issue in *Simon*, it makes no reference to underinsured motorists insurance. The declarations page of the Roys' policy shows that uninsured motor vehicle coverage ("Coverage U") had been purchased in the amount of $25,000/$50,000. The accompanying policy booklet defined Coverage U clearly and unambiguously. That definition, as we have seen, complied with Ky.Rev.Stat. 304.-20–020—and although it included an underinsured motorist coverage component, just as the statute said it had to, it did not provide any such coverage in excess of the $25,000/$50,000 limit specified on the declarations page.

Finally, we turn to Mrs. Roy's contention that she is entitled to underinsured motorist coverage in excess of $25,000 on each of the four State Farm policies issued to Mr. Roy on vehicles other than the one he was driving at the time of the accident. The contention has no merit. All of the policies in question contain terms that are identical, in all material respects, except for the fact that some of the policies had lower limits on the coverage for liability to third persons. There is no separate reference to underinsured motorist coverage on the declarations page of any of the other policies, and each declarations page shows limits of $25,000/$50,000 for "Coverage U." If State Farm is not obligated to pay Mrs. Roy under the policy on the pickup truck

---

**3.** The *Simon* court refrained from deciding whether Ky.Rev.Stat. 304.39–320 allows an insurance company to sell, and a policyholder to buy, underinsured motorist coverage for an agreed amount that is not co-extensive with the limits of the policyholder's coverage for liability to others. State Farm's coverage selection or rejection form indicates that State Farm assumed it was free to sell underinsured motorist

coverage under Ky.Rev.Stat. 304.39–320 in an agreed amount less than the limits of the policyholder's own liability coverage. The validity of that assumption need not be decided here, because the Roys did not elect to purchase any such coverage; they bought nothing beyond "Coverage U" with limits of $25,000/$50,000, and there can be absolutely no question of their right to do this.

that was involved in the accident, it is obviously not obligated to pay her under the other policies.

The judgment of the district court is AFFIRMED.