Danielle N. BIDWELL, Appellant,

v.

SHELTER MUTUAL INSURANCE
COMPANY, Appellee.

No. 2010–SC–000560–DG.

Supreme Court of Kentucky.

June 21, 2012.

Mark G. Arnzen, Beverly Ruth Storm, Frank Kern Tremper, Arnzen, Molloy, & Storm, P.S.C., Covington, KY, D. Keith Johnson, The Johnson Law Firm, Newport, KY, Counsel for Appellant.

Amelia Brown McCormick, James Wendell Taylor, Taylor, Thompson, & Brannon, PLLC, Lexington, KY, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

This case presents the question of whether an automobile insurance policy's permissive user step-down provision is valid and enforceable. Specifically, we are being asked to determine whether the particular provision at issue is sufficiently conspicuous, plain and clear to satisfy the doctrine of reasonable expectations. The Kenton Circuit Court entered summary judgment in favor of the insurance company, declaring the permissive user step-down provision enforceable. In a split decision, the Court of Appeals affirmed. Because we believe that the policy's permissive user step-down provision violates the doctrine of reasonable expectations, we reverse.

## I. BACKGROUND

Appellant, Danielle Bidwell, was seriously injured in a single-vehicle accident while riding as a passenger in a car operated by Joshua Tarlton. Tarlton was using the vehicle with the permission of Frank and Missy Gaines (the Gaineses), who owned and insured the vehicle. Appellee, Shelter Mutual Insurance Company (Shelter), issued the Gaineses' insurance policy. Tarlton had no other automobile insurance coverage.

The Declarations page of the vehicle's insurance policy states that Shelter's bodily injury liability is limited to $250,000 per person and $500,000 per accident. After submitting her claim for the full $250,000, Shelter informed Bidwell that the policy's permissive user step-down provision limited her claim to $25,000—the statutory minimum required by Kentucky law. See KRS 304.39–110. Bidwell argued that the provision was unenforceable and that the $250,000 listed on the Declarations page of the policy was therefore available for her claim.

Because the language and organization of the Gaineses' auto-insurance policy is pivotal to the dispute, we pause here to describe it in general terms. We will address specific details as necessary in the "Analysis" section.

The first page of the policy is the Declarations page, which serves as a summary of the policy's terms.[1] According to the policy's Index, the Declarations page lists "[t]he named insured, additional listed insureds, insured vehicle, policy period, types of coverage and amount of insurance you have." As previously noted, the actual Declarations page limits Shelter's liability for bodily injury to $250,000 per person, and $500,000 per accident. It makes no mention of any coverage limitation for permissive users.

The first reference to the permissive user step-down provision at issue in this case appears on pages ten and eleven of the policy. That provision addresses coverage for persons insured under the policy solely because they have permission or general consent to use the vehicle. The provision attempts to limit coverage of these persons to "the minimum limits of liability insurance coverage specified by the **financial responsibility law** applicable to the **accident,** regardless of the limits stated in the Declarations."[2]

The second reference to the permissive user step-down provision appears on page thirteen of the policy under the "LIMIT OF **OUR** LIABILITY" subsection. This provision is substantively identical to the provision that appears on pages ten and eleven. And although it appears in the policy twice, it does not appear, nor is any reference made to it, on the Declarations page.

The "financial responsibility law applicable to" *this* accident is KRS 304.39–110, although the Gaineses' policy never specifically mentions it or summarizes its contents. That statute, titled "Required minimum tort liability insurance," provides the following:

(1) The requirement of security for payment of tort liabilities is fulfilled by providing:

  (a) Either:

    1. Split limits liability coverage of not less than twenty-five thousand dollars ($25,000) for all damages arising out of bodily injury sustained by any one (1) person, and not less than fifty thousand dollars ($50,000) for damages arising out of bodily injury sustained by all persons injured as a result of any one

---

**1.** The Declarations page appears as the face page of the policy's materials. The actual policy itself begins several pages later after a series of four endorsements. However, for lack of a better term, we refer to the Declarations page as the "first" page of the policy.

The Declarations page provides, in pertinent part:

THE LIMIT OF THE COMPANY'S LIABILITY IS STATED IN THE POLICY AND APPLIES AS FOLLOWS:

| COVERAGE | A BODILY INJURY | | B PROPERTY DAMAGE | C MEDICAL PAYMENTS | D ACCIDENTAL DEATH |
|---|---|---|---|---|---|
| | EACH PERSON | EACH ACCIDENT | EACH ACCIDENT | EACH PERSON | EACH PERSON |
| LIMIT | $250,000 | $500,000 | $100,000 | | |
| PREMIUM | | | X | | |

| E UNINSURED MOTORISTS | | F COLLISION | G COMPREHENSIVE | J EMERGENCY ROAD SERVICE |
|---|---|---|---|---|
| EACH PERSON | EACH ACCIDENT | | | EACH DISABLEMENT |
| $50,000 | $100,000 | | | $30 |
| | X | | | X |

**2.** Unless otherwise indicated, all of the emphases in the policy language are original to

(1) accident, plus liability coverage of not less than ten thousand dollars ($10,000) for all damages arising out of damage to or destruction of property, including the loss of use thereof, as a result of any one (1) accident arising out of ownership, maintenance, use, loading, or unloading, of the secured vehicle; or

2. Single limits liability coverage of not less than sixty thousand dollars ($60,000) for all damages whether arising out of bodily injury or damage to property as a result of any one (1) accident arising out of ownership, maintenance, use, loading, or unloading, of the secured vehicle....

KRS 304.39–110. Thus, the policy's reference to "minimum limits of liability insurance coverages mandated by the **financial responsibility law** applicable to the **accident**," means, in this case, $25,000 per person for bodily injury—a reduction of some 90% from the $250,000 in coverage stated on the Declarations page.

Naturally, Bidwell and Shelter disagreed about the amount of coverage available for her claims, so Bidwell filed for a declaratory judgment, asking the trial court to declare the permissive user step-down provision in the Gaineses' policy unenforceable. In her motion for summary judgment, Bidwell argued that the step-down provision was inconspicuous and ambiguous, and therefore unenforceable as a matter of law. Shelter filed a cross motion for summary judgment, urging the trial court to enforce the limitation.

Ultimately, the trial court ruled in Shelter's favor, because even though it conceded that "Shelter could have done a better job making this provision abundantly clear to the average insured," on balance it was sufficiently clear and conspicuous. In a split decision, the Court of Appeals affirmed. The dissent, however, would have held that the provision is inconspicuous, "and because Shelter agrees to pay the amounts included on the declarations page, an ambiguity exists regarding whether the insureds can rely on the coverage listed in the declarations page." *Bidwell v. Shelter Mut. Ins. Co.*, No. 2009–CA–001298–MR, 2010 WL 3187986, at *8 (Ky.App. August 13, 2010) (Moore, J., dissenting). The dissent would have resolved this ambiguity in Bidwell's favor. *Id.* We subsequently granted discretionary review.

## II. ANALYSIS

Bidwell argues that the permissive user step-down provision in the policy issued by Shelter is unenforceable as a matter of law. Specifically, she argues that the limitation of coverage for permissive users is not sufficiently conspicuous, plain and clear to defeat the insureds' reasonable expectation of coverage. Additionally, Bidwell argues that the step-down provision creates an ambiguity that, consistent with our precedent, should be construed liberally in favor of the insured—here, Bidwell vis-à-vis the Gaineses' policy.

To be enforceable, Kentucky law requires a limitation of insurance coverage, such as a permissive user step-down provision, to be "clearly stated in order to apprise the insured of such limitations." *St. Paul Fire & Marine Ins. Co. v. Powell–Walton–Milward, Inc.*, 870 S.W.2d 223, 227 (Ky.1994). "[N]ot only is the exclusion to be carefully, expressed, but ... the operative terms clearly defined." *Id.* Thus, when ambiguities exist, we resolve them against the drafter "in order to circumvent the technical, legalistic and complex contractual terms which limit benefits to the insured." *Simon v. Cont'l Ins. Co.*,

the policy.

724 S.W.2d 210, 213 (Ky.1986) (quoting R.H. Long, *The Law of Liability Insurance,* § 5.10B).

■■■ "An essential tool in deciding whether an insurance policy is ambiguous, and consequently should be interpreted in favor of the insured, is the so-called 'doctrine of reasonable expectations.'" *Simon,* 724 S.W.2d at 212. We explained in *Simon* that "'[t]he gist of the doctrine is that the insured is entitled to all the coverage he may reasonably expect to be provided under the policy. Only an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage will defeat that expectation.'" *Id.* (quoting Long, *supra,* at § 5.10B). Accordingly, "the manner in which the policy is structured" is relevant with respect to whether an ambiguity exists. *Id.*

In *Simon,* this Court upheld summary judgment in favor of an insured where the policy violated the insured's reasonable expectation of coverage. *Id.* at 213. In that case, the individual responsible for the accident was an *under*insured motorist. *Id.* at 210. The Declarations page of the policy at issue failed to provide any limits for underinsured motorist coverage. *Id.* While it was undisputed that the insured requested and paid for underinsured motorist coverage, the insurance company argued that it was coextensive with its liability for *un*insured motorists, which was $10,000 per person, and $20,000 per accident. *Id.* at 211. Indeed, the policy's "Definitions" section stated "'uninsured highway vehicle' includes an underinsured highway vehicle." *Id.* at 212. The insured, on the other hand, argued that he was entitled to $100,000, which was the policy's liability limits, and the number that appeared on the Declarations page under "LIABILITY TO OTHERS." *Id.* at 211.

After analyzing the policy's structure and content, this Court held:

> When considered from the standpoint of:
> (a) a face sheet [e.g., a Declarations page] that provides limits for uninsured motorist coverage but omits limits for underinsured motorist coverage;
> (b) a section in the policy on uninsured motorist insurance which mentions "underinsured" but only in limited and confusing terminology; and
> (c) the reasonable expectations of an insured which would accompany the purchase of underinsured motorist coverage absent "an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage" (Long, *supra*); this policy must be viewed as ambiguous and the coverage unlimited except to the extent that the insured knows he has purchased automobile liability insurance limited to $100,000. The insured had the right to expect that he had underinsured motorist coverage to the extent of $100,000, less the offset from the tortfeasor's liability coverage.

*Id.* at 213.[3] Using these factors as guideposts, we now turn to the permissive user step-down provision at issue in this case.

**A. Permissive User Coverage is Selectively Omitted From the Declarations Page**

■ First, as in *Simon,* the Declarations page is silent with respect to any limitation included later in the policy, even though the step-down provision radically limits the amount of coverage that is listed on that page. Rather, the Declarations page indicates, *in unqualified terms,* that

---

**3.** The Court also noted that defining "uninsured highway vehicle" as including "underinsured highway vehicle" was "best described as an 'oxymoron,' a combination of incongruous words, because the word 'uninsured' by any normal definition would necessarily *exclude* 'underinsured' as a contradiction in terms." *Id.* at 212.

the limit of Shelter's liability for bodily injury is $250,000 per person, and $500,000 per accident.[4] Later in the policy it states, *in unqualified terms*, that "[i]f **you** pay the premium when due, this policy provides the insurance coverages in the amounts shown in the Declarations." When reading these two provisions together, it is reasonable for a policyholder to expect that a passenger injured in his vehicle would be insured for her injuries up to $250,000, regardless of who was driving.

### B. The Step-Down Provision is Mentioned in Limited and Confusing Terms

Next, as in *Simon*, the step-down provision is mentioned in limited and confusing terminology as the fifth of five definitions of "insured":

> Any **individual** who has **permission** or **general consent** to **use** the **described auto.** However, the limits of **our** liability for **individuals** who become **insureds** solely because of this subparagraph, will be the minimum limits of liability insurance coverage specified by the **financial responsibility law** applicable to the **accident,** regardless of the limits stated in the Declarations.[5]

What makes this provision particularly confusing is that it purports to limit[6] coverage to some indeterminate figure, indicated by a cryptic reference to some "financial responsibility law applicable to the accident." Rather than clearly state that the $250,000 figure listed on the Declarations page is inapplicable to permissive users of the vehicle, and that coverage of permissive users is most likely going to be limited to $25,000 or less,[7] it leaves the

---

4. Shelter argues that the heading "THE LIMIT OF THE COMPANY'S LIABILITY IS STATED IN THE POLICY AND APPLIES AS FOLLOWS," located on the Declarations page, "clearly alerts the insured that the insurer *may* pay *up to* the amounts listed but that the company's liability as related to those amounts is limited by the policy." Brief for Respondent at 11, *Bidwell v. Shelter Mut. Ins. Co.*, Case No. 2010–SC–0560–DG (Ky. 2012). We believe, however, that that phrase is just as susceptible to another interpretation: that Shelter will pay up to the amounts stated depending on the *extent* of the personal injury or property damage suffered, i.e., that their liability is limited to $250,000 per person in the event that an insured suffers *more than* $250,000 in injury-related expenses.

5. Interestingly, of the five definitions of "insured" under this subsection, this is the only definition that *limits* coverage—the other four definitions are inclusive, identifying who is covered by the policy's $250,000 limit.

6. We note here that this provision actually *may not* limit coverage in certain circumstances, adding to its confusing nature. For example, if the Declarations page of a policy limits Shelter's bodily injury liability to $25,000, then it would be *coextensive with* the applicable financial responsibility law, not limited by it. *See* KRS 304.39–110 (requiring at least $25,000 in bodily injury coverage).

7. As will be discussed in more detail *infra*, assuming Shelter drafts an enforceable permissive user step-down provision, its liability will be limited to $25,000 in the overwhelming majority of cases. This is because, for the policies it issues in Kentucky, the "financial responsibility law applicable to the accident" will almost always be KRS 304.39–110, which requires a minimum of $25,000.

Additionally, even if a permissive user travels out of state and the financial responsibility law applicable to the accident is the law of another state, twenty-seven other states require a minimum of $25,000 in bodily injury coverage, including Indiana, Missouri, Tennessee, and Virginia—all of which are states sharing a border with Kentucky. Insurance Information Institute, *Compulsory Auto/Uninsured Motorists*, http://www.iii.org/issues_updates/compulsory-auto-uninsured-motorists.html (last visited May 4, 2012). Two other states that border Kentucky, Illinois and West Virginia, require minimum liability coverage of $20,000. *Id.* Finally, Kentucky's remaining border state, Ohio, requires a minimum of only $12,500 in bodily injury coverage. *Id.* Thus, in the overwhelming majority of cases, Shelter's bodily injury liability will be limited to $25,000 or *less*.

policyholder guessing as to this provision's meaning.

So too does the policy's second reference to the step-down provision, which provides:

Regardless of the limit of liability shown in the Declarations, the limit of liability under Coverages A and B [the bodily injury and property damages figures, respectively] for **persons** who meet the definition of **insured** solely because they have **permission** or **general consent** to **use** the described auto, will be the minimum limits of liability insurance coverages mandated by the **financial responsibility law** applicable to the **accident.**

Although this provision is preceded by an indication that the amounts listed on the Declarations page are "subject to the following limitations," the provision contains the same nondescript, cryptic, and obscure reference to the applicable "financial responsibility law." Once again, there is no mention that the applicable financial responsibility law in Kentucky reduces the Gaineses' coverage by 90% for permissive users, or that in the overwhelming majority of cases, Shelter's permissive user liability will be $25,000 or less.[8] In sum, both references to the step-down provision in the Gaineses' policy contain "limited and confusing terminology," *id.* at 213, and are anything *but* "clearly stated in order to apprise the insured of such limitations." *St. Paul Fire,* 870 S.W.2d at 227.

## C. The Step–Down Provision is Insufficiently Plain and Clear to Defeat the Reasonable Expectation of Coverage Created by the Declarations Page

■ Finally, rather than place *any* emphasis on the operative phrase of the step-down provision—that is, "regardless of the limits stated in the Declarations"—Shelter places *all* of the emphasis on the figures *provided on* the Declarations page. First, Shelter indicates, in unqualified terms, that if the policyholder pays "the premium when due, th[e] policy provides the insurance coverages *in the amounts shown in the Declarations.*" (Emphasis added.) As noted in Judge Moore's dissent in the Court of Appeals, this statement "is patently inconsistent with the step-down provision. . . ." *Bidwell,* 2010 WL 3187986, at *8 (Moore, J., dissenting).

Second, the policy's "index" indicates that the Declarations page provides "[t]he named insureds, insured vehicle, policy period, *types of coverage and amount of insurance you have.*" (Emphasis added.) This, however, is an incomplete statement because the amount of permissive user coverage the Gaineses carried was not listed on that page.

Third, Shelter places an affirmative duty on the policyholder to confirm that his coverages are correct by *checking the Declarations page.* To wit, under the heading "GENERAL AGREEMENTS ON WHICH INSURING AGREEMENTS ARE BASED," appears the following subsection:

**YOUR** DUTY TO MAKE SURE **YOUR** COVERAGES ARE CORRECT **You** agree to check the Declarations page each time **you** receive one, in order to make sure that:

(1) all the coverages **you** requested are included in this policy; and

(2) the limit of **our** liability for each of those coverages is the amount **you** requested.

---

In fact, of the forty-eight other states and the District of Columbia that have laws requiring motorists to carry minimum bodily injury liability coverage, only six states require *more than* $25,000 in coverage, and the highest minimum coverage mandated by any state is $50,000—which is required by both Alaska and Maine. *Id.* New Hampshire is the only state that currently does not have such a law. *Id.*

8. *See supra* note 7.

**You** agree to notify **us** within ten days of the date **you** receive any Declarations page if **you** believe the coverages or amounts of coverage it shows are different from those **you** requested. If **you** do not notify **us** of a discrepancy, **we** presume the policy meets your requirements.

As summarized by Judge Moore's dissent in the Court of Appeals:

[T]he insureds are required to agree to check the declarations page to be certain that it contains the coverage they want. And, Shelter agrees to pay the amounts listed *on the declarations page.* Yet, several pages later in the policy, Shelter limits its coverage *regardless* of what is listed on the declarations page.

*Id.* at *9.

In light of the foregoing, we conclude that the Declarations page of the Gaineses' policy creates a reasonable expectation that the amounts listed therein will be available to individuals injured in the covered automobile, regardless of who is driving. We further conclude that the permissive user step-down provision is insufficiently plain and clear to defeat that reasonable expectation. It is therefore unenforceable as a matter of law.

■ We recognize that insured persons are charged with knowledge of their policy's contents, *National Life & Accident Ins. Co. v. Ransdell,* 259 Ky. 559, 82 S.W.2d 820, 823 (1935), and that "the [D]eclarations page is but a single page briefly describing the various coverage and maximum limits," *Bidwell,* 2010 WL 3187986, at *4. We are therefore not prepared to hold in this instance that the permissive user step-down provision must appear on the Declarations page.

In this case, however, the Gaineses policy: (1) stated in unqualified terms that "[i]f **you** pay the premium when due, this policy provides the insurance coverages in the amounts shown in the Declarations";

(2) contained an index purporting that the Declarations page provided the "types of coverage and amount of insurance you have," even though the Declarations page made no reference to a permissive user limitation (which is a type of coverage and amount of insurance the Gaineses had); and (3) required the Gaineses to agree to check the Declarations page to be certain that it contained the coverage they wanted. The Declarations page, therefore, created a reasonable expectation that the coverages listed on it would be available, regardless of who was driving. For Shelter to defeat the policyholder's expectations, the permissive user limitation must be "unequivocally conspicuous, plain and clear," *Simon,* 724 S.W.2d at 212 (quoting *Long, supra,* at § 5.10B), and in its present form, it is not.

Finally, we pause to address Shelter's argument that the provision is phrased in general terms so that no matter where a permissive user might drive the insured vehicle, the liability limits available to that permissive driver will be in compliance with any state's laws. For instance, in most cases the laws "applicable to the accident" are the laws of the state in which the accident occurs. *See Restatement (Second) of Conflict of Laws* § 146 (1971) ("In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 [Choice–of–Law Principles] to the occurrence and the parties, in which event the local law of the other state will be applied."). Thus, if a permissive user operates the insured vehicle in one of the states with statutorily mandated limits higher than those required by Kentucky, the permissive user will be in compliance with that state's laws.

■ Shelter's point is well-taken. And Shelter is free to phrase its permissive user step-down provision so as to limit its liability to the minimum required by whichever state's law is applicable to the accident, *so long as* it is sufficiently conspicuous, plain and clear, to reasonably inform the insured. Thus, we do not hold that the $25,000 figure in KRS 304.39–110 must be included in the step-down provision,[9] only that the insurer must clearly inform the insured how coverage for permissive users is limited.[10]

## III. CONCLUSION

We conclude that the permissive user step-down provision in the Gaineses' automobile insurance policy is insufficiently plain and clear to defeat the reasonable expectations of the insureds. We therefore reverse and remand to the Kenton Circuit Court for proceedings consistent with this opinion.

All sitting. All concur.

9. Although we stop short of holding that the exact figure *must* be included in the provision, it cannot go unnoticed that, as previously noted, in the overwhelming majority of cases, the financial responsibility law applicable to the accident will limit Shelter's bodily injury liability to $25,000 or less. Insurance Information Institute, *supra*, http://www.iii.org/issues_updates/compulsory-auto-uninsured-motorists.html. The only states that currently require a minimum *more* than $25,000 are Maryland, Minnesota, North Carolina, and Texas ($30,000 each); and Alaska and Maine ($50,000 each). *Id.* Thus, had the step-down provision in the Gaineses' policy been enforceable, the *maximum* permissive user coverage that Shelter could have possibly been liable for is $50,000—and that is only if the Gaineses permitted someone not otherwise insured under their policy to drive their car to Alaska or Maine. This is still a *dramatic* reduction of some 80% of the limits for bodily injury coverage listed on the Declarations page.

10. For example, an insurer could alert the insured that: (1) *no matter which state's law* applied, coverage for permissive users would be significantly reduced from the amounts listed on the Declarations page; and (2) under *no* state's current financial responsibility law would it be liable for more than $50,000 in permissive user coverage. Another option would be to include a list of coverage limits in each state.