William (Bill) HANEY, Jr., d/b/a Haney Leasing Company; and Haney Leasing Company, Inc., Appellants,

v.

Barbara BUTLER, Widow of Roy Lee Butler, Deceased; Uninsured Employers' Fund; J. Landon Overfield, Administrative Law Judge; and Workers' Compensation Board, Appellees.

Uninsured Employers' Fund, Appellant,

v.

William (Bill) Haney, d/b/a Haney Leasing Company; Haney Leasing Company, Inc.; Barbara Butler, Widow of Roy Lee Butler, Deceased; J. Landon Overfield, Administrative Law Judge; and Workers' Compensation Board, Appellees.

Nos. 98–SC–643–WC, 98–SC–665–WC.

Supreme Court of Kentucky.

Feb. 18, 1999.

Rehearing Denied June 17, 1999.

Charles David Walter, Paducah, KY, for Haney and Haney Leasing Company, Inc.

Dana C. Stinson, Assistant Attorney General, Uninsured Employers' Fund, Frankfort, KY, for Uninsured Employers' Fund.

Craig Housman, Housman & Sparks, Paducah, KY, for Butler, etc.

## OPINION OF THE COURT

These appeals by the employer and the Uninsured Employers' Fund (UEF) concern several issues which arise from an extraterritorial workers' compensation claim filed by the widow of Roy Lee Butler (the decedent) against William Haney (Haney), d/b/a/ Haney Leasing Company; Haney Leasing Company, Inc. (Haney Leasing); and the UEF.

There was evidence that Haney and the decedent had a close personal relationship and had been involved in a number of business ventures over the years; however, Haney Leasing was incorporated in Kentucky in February, 1990, with Haney as the sole shareholder, sole director, and president. There was evidence that the decedent was vice president of the corporation and that he had apparently owned some stock in the corporation at one time, but he had sold it to Haney well before his death. Shortly before the accident which gave rise to this claim, the Kentucky Secretary of State had administratively dissolved Haney Leasing for failure to file an annual report, but the business continued to operate as a corporation, with Haney as the sole shareholder and director.

Haney Leasing was in the business of hauling cargo on the waterways of Kentucky, Alabama, Mississippi, Tennessee, and Louisiana, and was responsible for maintaining the barges and towboats which it leased for use in its operations. At least some of the vessels were leased from businesses owned by the decedent. Haney Leasing had approximately 30 employees, including captains, pilots, engineers, deckhands, and maintenance people. Its business offices were located in Paducah, Kentucky. The decedent was hired in Kentucky and had an office at the Paducah facility, although he resided near Nashville, Tennessee, at the time of his death. Some of the ports which Haney Leasing used for the repair and maintenance of vessels were located in Alabama.[1] Cargo was loaded/unloaded at Alabama ports, and Haney indicated that they had begun plans to move the operation to Alabama at the time of the decedent's death. However, there was no evidence that the corporation owned or leased any property at an Alabama port or maintained a business office in Alabama as of that time. There was evidence that at some point the corporation had a trailer in Epes, Alabama which was used for the storage of records; however, there also was evidence that this may not have occurred until after the claim arose.

The decedent acted as a "troubleshooter" for Haney Leasing, inspecting casualty damage and supervising repairs. Approximately 80% of his work was performed in the state of Alabama. Although there was evidence that the decedent performed some work in Tennessee, he also performed work in Kentucky, Mississippi, and Louisiana. There was no evidence concerning what portion his work time was spent in each state. Beginning in June, 1992, the decedent was paid a salary by Haney Leasing, the amount of which is reflected in his W–2 statement for 1992.

On November 29, 1992, the decedent was sent to Mobile, Alabama, to supervise the inspection and repair of a leased towboat and barges which had sustained storm damage. The evidence concerning whether the decedent's duties had been completed as of the afternoon of December 2, 1992, was conflicting. In any event, sometime during that night or the early morning of December 3, he died in a vehicular accident near Greensboro, Alabama. His reason for being there and his destination at the time were unclear. Greensboro is located northeast of Mobile and southwest of Tuscaloosa, but it is not located on the usual interstate highway route between Mobile and the Nashville, Tennessee, area where the decedent lived. Haney testified that Greensboro is approximately a 30–45 minute drive from Epes, Alabama, a port which was used by Haney Leasing for its log and wood chip contract, but that the corporation had no ongoing work at Epes at the time.

The Administrative Law Judge (ALJ) determined from the evidence that the decedent was an employee of Haney Leasing and that he supervised maintenance for its entire operation. In the absence of evidence that the decedent was assigned to a particular vessel or fleet of vessels, in view of the fact that other employees were charged with operating the vessels, and in view of the fact that he spent no portion of his time in the service of a vessel in navigation, the ALJ concluded that the decedent was not covered by the Jones Act and that the exemption contained in KRS 342.650(4) did not apply. The ALJ rejected the employer's assertion that the death was not work-related, noting the absence of substantial evidence that the decedent was "stepping outside the course and scope of his trip to Alabama to attend to Haney Leasing, Inc.'s business at the time of his death." KRS 342.680.

With regard to the question of extraterritorial coverage, the ALJ cited KRS

---

1. There was evidence that Haney Leasing used several Alabama ports including those in Mobile, Scottsboro, Florence, Demopolis, and Epes.

342.670, which provides, in pertinent part as follows:

(1) If an employe, while working outside the territorial limits of this state, suffers an injury on account of which he, or in the event of his death, his dependents, would have been entitled to the benefits provided by this chapter had such injury occurred within this state, such employe, or in the event of his death resulting from such injury, his dependents, shall be entitled to the benefits provided by this chapter, provided that at the time of such injury:

(a) His employment is principally localized in this state, or

(b) He is working under a contract of hire made in this state in employment not principally localized in any state, or

(c) He is working under a contract of hire made in this state in employment principally localized in another state whose workers' compensation law is not applicable to his employer, or

(d) He is working under a contract of hire made in this state for employment outside the United States and Canada.

. . . .

(4)(d) A person's employment is principally localized in this or another state when:

1. His employer has a place of business in this or such other state and he regularly works at or from such place of business, or

2. If subparagraph 1. foregoing is not applicable, he is domiciled and spends a substantial part of his working time in the service of his employer in this or such other state;

After summarily concluding that KRS 342.670(1)(a) and (d) did not apply, the ALJ noted that subsections (b) and (c) must be considered in conjunction with the definitions of "principally localized" contained in KRS 342.670(4)(d)1. and 2. After noting that subparagraph (4)(d)2. was "easily omitted," the ALJ determined that there were several places of business in

Alabama out of which the corporation operated and that the decedent presumably was working out of one of those places of business. The ALJ noted that the decedent worked 80% of the time in Alabama and concluded that his employment was principally localized in Alabama. Because there was no evidence that Alabama law did not apply to the claim, the ALJ concluded that the claim did not come within the jurisdictional requisites of KRS 342.670; therefore, it was dismissed.

Claimant petitioned for reconsideration, requesting a specific finding which identified the Haney Leasing "place of business" in Alabama at or from which the decedent had worked. She pointed out that the only specific Alabama address in the record was located in Mobile and was Haney's then-current address but not his address in 1992. She also asserted that the storage trailer was not used by Haney Leasing until after her husband's death. After the petition was overruled, she appealed, asserting that the decedent was hired in Kentucky and that because he regularly worked in five different states, his employment was not principally localized in any state. KRS 342.670(1)(b).

The decision was affirmed in all respects by the Workers' Compensation Board (Board); however, the Court of Appeals reversed with regard to the question of extraterritorial jurisdiction. The decision was based upon the court's determination that because Haney Leasing neither owned nor leased property in any Alabama port and because it had no fixed physical location in Alabama where at least some regular business was conducted, it had no "place of business" in Alabama for the purposes of KRS 342.670(4)(d)1. The court likened the company's use of Alabama ports to a trucker's use of public truck stops to purchase gasoline or perform repairs. In the absence of substantial evidence that Haney Leasing had an actual place of business in Alabama, the court concluded that the decedent's employment could not have been principally localized in

Alabama. Instead, the court determined, the evidence compelled a finding that the decedent's employment was not principally localized in any state and, therefore, a conclusion that Kentucky had extraterritorial jurisdiction over the claim. KRS 342.670(1)(b). These appeals by Haney Leasing and the UEF followed.

■ First, is the assertion that Haney and the decedent were joint venturers and that the decedent was not an employee of Haney Leasing or of Haney, himself, at the time of his death. We observe that the ALJ's determination that the decedent was an employee of Haney Leasing was affirmed by the Board and the Court of Appeals as supported by substantial evidence. Having considered the evidence and the arguments of the parties, we are not persuaded that the view of the evidence which they took was either patently unreasonable or flagrantly implausible, and it has not been shown that they overlooked or misconstrued a controlling statute or precedent in affirming the ALJ's finding.

■ Second, is the question of whether the ALJ was compelled to determine that this claim was exempted from coverage pursuant to KRS 342.650 because a rule of liability was provided by federal law. Again, the ALJ's determination that neither the Jones Act nor the exception contained in KRS 342.650(4) applied to this claim was affirmed by the Board and the Court of Appeals as supported by substantial evidence. Having considered the evidence and the arguments of the parties, we are not persuaded that the view of the evidence which they took was either patently unreasonable or flagrantly implausible, and it has not been shown that they overlooked or misconstrued a controlling statute or precedent in affirming the ALJ's finding.

■ Third, is the question of work-relatedness. Here, the worker was killed and, therefore, was unable to testify concerning the events of December 2–3, 1992.

In such instances, KRS 342–680 provides, in pertinent part, as follows:

where there is unrebutted prima facie evidence that indicates that the injury was work related, it shall be presumed, in the absence of substantial evidence to the contrary, that the injury was work related, that sufficient notice of the injury has been given, and that the injury or death was not proximately caused by the employe's intoxication or by his wilful intention to injure or kill himself or another.

The prima facie evidence contemplated by this section amounts to no more than sufficient evidence to support an inference that the worker's death arose out of and in the course of the employment. KRS 342.680 clearly indicates that the presumption may be rebutted only by substantial evidence which establishes that the worker's death was not related to the employment. See *Wilson v. Wizor*, Ky., 544 S.W.2d 231 (1976).

■ This court has adopted the majority view stated in Larson, *Larson's Workers' Compensation Law*, § 25, that where work involves travel away from the employer's premises, the worker is considered to be within the course of the employment during the entire trip unless a distinct departure on a personal errand is shown. *Black v. Tichenor*, Ky., 396 S.W.2d 794, 797 (1965); See also *Turner Day & Woolworth Handle Company v. Pennington*, 250 Ky. 433, 63 S.W.2d 490 (1933); *Standard Oil Company v. Witt*, 283 Ky. 327, 141 S.W.2d 271 (1940). KRS 342.680 places the burden on the defendants to rebut the presumption that the death was work-related with substantial evidence that it was not. Here, it is undisputed that the decedent was present in Alabama in the service of his employer. His reason for being near Greensboro and his destination at the time of his death were not apparent, and the ALJ determined that there was no substantial evidence that the decedent actually was engaged in a personal errand at the time of

his death. Having considered the evidence and the arguments of the parties, we are not persuaded that the defendants have pointed to any evidence which compelled a finding in their favor, that the view of the evidence taken by the Board and the Court of Appeals was either patently unreasonable or flagrantly implausible, or that they overlooked or misconstrued a controlling statute or precedent in affirming the ALJ's decision. See *Special Fund v. Francis*, Ky., 708 S.W.2d 641 (1986); *Western Baptist Hospital v. Kelly*, Ky., 827 S.W.2d 685 (1992). In a related matter, we are not persuaded that the ALJ abused his discretion in refusing to grant additional time for the defense to take evidence concerning the decedent's actions on the night of his death or that the avowal testimony by Vanessa Chipley or Van Stuart would have compelled a different result. See *Cornett v. Corbin Materials, Inc.*, Ky., 807 S.W.2d 56 (1991).

Fourth, is the question of whether Kentucky has extraterritorial jurisdiction over this claim. The employer argues that because the decedent worked most of the time in Alabama and was injured in Alabama, public policy favors Alabama jurisdiction over the claim. We observe, however, that such considerations were presumably taken into account by the legislature in the drafting of KRS 342.670. As was recognized by the tribunals below, an analysis of whether the Kentucky Act applies to an extraterritorial claim turns upon the definition of the term "principally localized" which is provided in KRS 342.670(4)(d)1. and 2. A review of the provision makes it clear that a particular set of facts must be considered, first, in view of subsection (4)(d)1. Only if that provision does not apply, does the analysis proceed to subsection (4)(d)2. It may be concluded that a particular employment is not principally localized in any state only after a determination that both subsections (4)(d)1. and (4)(d)2. do not apply.

Here, the ALJ determined that the decedent's employment was principally localized in Alabama pursuant to subsection (4)(d)1., so the question on appeal is whether there was substantial evidence that the employer "ha[d] a place of business" in Alabama and substantial evidence that the decedent regularly worked at or from that place of business. We are aware of no decision which construes the phrase "has a place of business" for the purpose of determining if a worker's employment is principally localized in a particular state.

In *Eck Miller Transportation Corporation v. Wagers*, Ky.App., 833 S.W.2d 854 (1992), the injured truck driver was a Kentucky resident; there was evidence that he did a substantial amount of work-related activities (paperwork, vehicle maintenance, etc.) at his home in Kentucky; the employer had a freight terminal in Kentucky; and the worker's paychecks were drawn on a Kentucky bank. Although the worker was notified of his hiring in Kentucky, the necessary paperwork was done at the employer's principal office which was located in Indiana, and he was subsequently assigned to the employer's freight terminal in Tennessee. It was from the Tennessee terminal that he essentially received all his work orders, and he was injured in Tennessee. In reinstating the ALJ's decision, the court concluded that the worker regularly worked from the employer's Tennessee freight terminal and that, regardless of other factors, there was substantial evidence that his employment was principally localized in Tennessee pursuant to KRS 342.670(4)(d)1. There, it was undisputed that the Tennessee freight terminal constituted a place of business for the employer.

In *Davis v. Wilson*, Ky.App., 619 S.W.2d 709 (1980), the employer purchased junked cars and crushed them with a mobile car-crusher. He lived in Kentucky and conducted the business from a location in Pineville, Kentucky, but the car-crushing device was used both in Kentucky and in Tennessee. The injured worker was a Kentucky resident and was hired in Ken-

tucky but injured in Tennessee. At the time of the injury, he had been employed for a total of eleven weeks, working two weeks (18% of the total) in Kentucky and nine weeks (82% of the total) in Tennessee. The "old" Workers' Compensation Board had denied extraterritorial coverage. Addressing KRS 342.670(4)(d)1., the Court of Appeals determined that, even if it were assumed that the employer had a place of business in both Kentucky and Tennessee, there was no steady or uniform practice of working in either state. In other words, the injured worker worked sporadically in both states but "regularly" in neither; therefore, the court concluded that subsection(4)(d)1. did not apply on those facts. However, because the worker was a Kentucky resident and spent a substantial amount of time working in Kentucky, the evidence compelled a determination that the employment was principally localized in Kentucky pursuant to subsection (4)(d)2. As a result, the claim was held to come within the requirements of KRS 342.670(1)(a).

■ As is apparent, neither case sheds light on what the legislature intended by the phrase "has a place of business;" furthermore, neither does Larson, *Larson's Workers' Compensation Law*, § 87.40, *et. seq.*, although it is instructive concerning the principles of extraterritorial jurisdiction. We observe, however, that the use of the word "has" denotes possession. *Webster's New Collegiate Dictionary*, 1975 edition. Having considered KRS 342.670 in its entirety, the arguments of the parties, and the opinions of the tribunals below, we conclude that for an employment to be principally localized within a particular state for the purposes of KRS 342.670(4)(d)1., the employer must either lease or own a location in the state at which it regularly conducts its business

affairs, and the subject employee must regularly work at or from that location.

■ The evidence upon which the ALJ relied in concluding that Haney Leasing had places of business in Alabama was as follows: Alabama ports were used to load/unload cargo pursuant to hauling contracts; Alabama ports were used to repair or maintain leased barges and towboats; Haney had an address in Mobile as of sometime after the decedent's death; and a trailer located in Alabama was used to store certain Haney Leasing business records after the decedent's death.[2] Having considered the foregoing, we agree with the Court of Appeals that there was no substantial evidence that Haney Leasing maintained a place of business in Alabama. Evidence that a corporation performed part of a shipping contract at a particular port or that it used a port to repair equipment is not sufficient to demonstrate that the corporation "has a place of business" at the port; likewise, the fact that a worker spends the majority of his time repairing company equipment at various ports within a state is not sufficient to demonstrate that his employer has a place or places of business within the state. There was no substantial evidence that on December 3, 1992, Haney Leasing had a location in Alabama where the corporation regularly conducted business; therefore, the decedent's employment was not principally localized in Alabama pursuant to subsection (4)(d)1.

■ With regard to the alternative argument that the evidence compelled a finding that the decedent's employment was principally localized in Tennessee pursuant to subsection (4)(d)2., we observe that there was no evidence concerning what portion of the 20% of the decedent's working time which was not spent in Alabama was spent in Tennessee. The evidence was that he spent some time working

---

**2.** We observe that the employer has not disputed the claimant's assertions with regard to the Mobile address and the trailer and, therefore, take them to be true. In any event, we are not persuaded that a trailer used to store business records would constitute a place of business.

there but that he also spent some time working in the other states where Haney Leasing's barges and towboats operated. Under those circumstances, it could not be said that there was sufficient evidence the decedent spent a "substantial part" of his working time in the service of Haney Leasing in the state of Tennessee to support a finding to that effect. Because neither party disputes the finding that the employment was not principally localized in Kentucky and because there is no substantial evidence that the employment was principally localized in Alabama, Tennessee, or any other state, it must be concluded that Kentucky has jurisdiction over the claim pursuant to KRS 342.670(1)(b).

The decision of the Court of Appeals is affirmed.

All concur.