Tiffanie EDWARDS, Appellant,

v.

Amanda CARLISLE; Shelter Insurance Companies; Wayne Lindle; and Becky Lindle, Appellees.

No. 2003–CA–001366–MR.

Court of Appeals of Kentucky.

June 25, 2004.

Discretionary Review Denied by Supreme Court Dec. 14, 2005.

Kenneth L. Sales, Paul J. Kelley, Louisville, KY, for appellant.

W. Mitchell Deep Jr., Henderson, KY, for appellee Shelter Insurance Companies.

Before GUIDUGLI, JOHNSON and MINTON, Judges.

## OPINION

JOHNSON, Judge.

Tiffanie Edwards has appealed from an order of the Jefferson Circuit Court entered on June 19, 2003, which granted Shelter Insurance Companies' motion for summary judgment, after determining that Edwards was not entitled to coverage under the underinsured motorist (UIM) provision of the policy issued by Shelter to Wayne and Becky Lindle, the parents of Edwards. Having concluded that there is no genuine issue as to any material fact, and that as a matter of law Edwards is not entitled to UIM benefits, we affirm.

On October 15, 1997, Edwards was driving southbound on Interstate–65 near Louisville, Kentucky, in a 1995 Ford Mustang. Although Edwards regularly used the vehicle, it was owned by her parents, Wayne and Becky Lindle. As an apparent act of horseplay, Amanda Carlisle, Edwards's passenger, grabbed the steering wheel of the vehicle Edwards was driving. Carlisle's actions caused the vehicle to go out of control and to strike the median wall of the interstate. As a result of this accident, Edwards sustained two fractured ankles and a fractured patella. At the time of the accident, Shelter provided insurance coverage on the 1995 Ford Mustang in a policy issued to Wayne and Becky Lindle. Carlisle was insured under a policy issued by Geico Insurance Company.

On October 5, 1999, Edwards filed a complaint against Carlisle in the Jefferson Circuit Court, seeking compensatory and punitive damages. On January 7, 2000, Shelter filed an intervening complaint for declaratory judgment, seeking a determination that Wayne and Becky Lindle, Edwards, and Carlisle were not entitled to coverage under the policy Shelter had issued to the Lindles. On February 21, 2000, the trial court entered an order dismissing Edwards's claims against Carlisle based on a settlement that included Geico's payment of its policy limits of $25,000.00 to Edwards.

On May 24, 2002, Shelter filed a motion for summary judgment, arguing that pursuant to the express terms of the policy issued to the Lindles, Edwards was not entitled to UIM benefits. On June 19, 2003, the trial court granted Shelter's motion for summary judgment. This appeal followed.

Our standard of review of a summary judgment is well-settled. We must determine whether the trial court erred by concluding that there was no genuine issue as to any material fact and that the movant was entitled to a judgment as a matter of law.[1] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] In *Paintsville Hospital Co. v. Rose*,[3] our Supreme Court stated that for summary judgment to be proper, the moving party must show that the adverse party cannot prevail under any circumstances. The Court has also held that "the proper function of summary judgment is to terminate litigation when, as a matter of law, it

---

1. *Scifres v. Kraft,* Ky.App., 916 S.W.2d 779, 781 (1996).

2. Kentucky Rules of Civil Procedure (CR) 56.03.

3. Ky., 683 S.W.2d 255, 256 (1985).

appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor."[4] Since factual findings are not at issue, we need not defer to the trial court.[5] "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor" [citation omitted].[6] Finally, "a party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial."[7]

Edwards claims that the trial court erred by determining that she was not entitled to UIM benefits under the policy purchased by her parents from Shelter. We disagree and hold that pursuant to the express terms of the insurance policy in question, Edwards is not entitled to UIM benefits.

 The construction and interpretation of an insurance policy is a question of law which is subject to *de novo* review on appeal.[8] A court must give clear and unambiguous terms in an insurance policy their plain and ordinary meaning.[9] In the case *sub judice*, the UIM endorsement at issue provided in pertinent part as follows:

COVERAGE E–1—UNDERINSURED MOTORISTS (DAMAGES FOR BODILY INJURY)
We[10] will pay damages for **bodily injury** which an **insured** or the **insured's** legal representative is legally entitled to re-

cover from the owner or operator of an ***underinsured motor vehicle***. The **bodily injury** must be caused by accident and *arise out of the ownership, maintenance or use of the* ***underinsured motor vehicle*** [emphases added].

ADDITIONAL DEFINITIONS

As used in this Coverage E–1,

· · ·

**(3) Underinsured motor vehicle** means:

(a) a **motor vehicle** the ownership, maintenance or use of which is insured or bonded for bodily injury liability at the time of the accident; and

(b) the limits of liability that apply from such vehicle to the **insured's** damages are less than a judgment recovered against a liable party for damages on account of **bodily injury** due to a motor vehicle accident.

But **underinsured motor vehicle** does not mean a **motor vehicle**:

(a) owned by or furnished or available for the regular use of **you** or a **relative**[.]

Further, the term "you" is defined as "the insured named in the Declarations and spouse," and the term "relative" is defined as "a person related to you by blood . . . who is a resident of and actually living in your household . . ." [emphases omitted].

In the case at bar, it is undisputed that (1) Wayne and Becky Lindle were the

---

**4.** *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476, 480 (1991).

**5.** *Goldsmith v. Allied Building Components, Inc.*, Ky., 833 S.W.2d 378, 381 (1992).

**6.** *Steelvest*, 807 S.W.2d at 480.

**7.** *Id.* at 482. *See also* Philipps, *Kentucky Practice*, CR 56.03, p. 321 (5th ed.1995).

**8.** *Cinelli v. Ward*, Ky.App., 997 S.W.2d 474, 476 (1998).

**9.** *Nationwide Mutual Insurance Co. v. Nolan*, Ky., 10 S.W.3d 129, 131 (1999).

**10.** The words in bold appear in bold in the insurance policy and indicate terms that are specifically defined elsewhere in the policy.

named "insureds" on the policy in question; (2) that the Lindles owned the 1995 Ford Mustang; (3) that Edwards is the Lindles's daughter and was living in their household at the time of the accident; and (4) that Edwards regularly used the 1995 Ford Mustang. Thus, pursuant to the express terms of the policy in question, the 1995 Ford Mustang did not fall within the definition of an "underinsured motor vehicle." Accordingly, Edwards is not entitled to UIM benefits under the policy issued by Shelter to Wayne and Becky Lindle.

■ Our interpretation is consistent with KRS 304.39–320(2), which requires insurers to "make available upon request" underinsured motorist coverage for their customers:

> Every insurer shall make available upon request to its insureds underinsured motorist coverage, whereby subject to the terms and conditions of such coverage not inconsistent with this section the insurance company agrees to pay its own insured for such uncompensated damages as he may recover on account of injury due to a motor vehicle accident because the judgment recovered against the owner of *the other vehicle* exceeds the liability policy limits thereon, to the extent of the underinsurance policy limits *on the* vehicle of the party recovering [emphases added].

The statute clearly contemplates that the underinsured motorist "will be operating a different vehicle than the vehicle providing UIM coverage for the injured claimant." [11]

In support of her argument that she is entitled to UIM benefits under Shelter's policy, Edwards claims that the 1995 Ford Mustang was "overtaken and controlled by Carlisle in causing the accident." Hence, Edwards contends that Carlisle became an underinsured motorist and that the 1995 Ford Mustang became the "underinsured motor vehicle" with respect to the issue of UIM coverage. We reject this interpretation of Shelter's coverage because it would have the effect of ignoring the clear and unambiguous policy language which excludes the 1995 Ford Mustang from the definition of an "underinsured motor vehicle." Accordingly, even if Carlisle were to be deemed the "operator" of the Lindles's vehicle at the time of the accident, Edwards would still not be entitled to UIM benefits since the 1995 Ford Mustang did not meet the definition of an "underinsured motor vehicle" pursuant to the express terms of Shelter's policy.

■ Finally, Edwards claims that she is entitled to UIM benefits under the doctrine of reasonable expectations. Specifically, Edwards argues that the UIM provision "is ambiguous in that it does not clearly define what constitutes an underinsured vehicle." According to Edwards, under the circumstances of this accident, she had a reasonable expectation that Shelter would provide UIM benefits pursuant to the policy issued to Wayne and Becky Lindle. We disagree.

■ In *Simon v. Continental Insurance Co.,*[12] our Supreme Court discussed the doctrine of reasonable expectations:

> The nature of the doctrine of reasonable expectations is summarized in R.H. Longs *The Law of Liability Insurance,* 5.10B, which states, in pertinent part:
>
>> The gist of the doctrine is that the insured is entitled to all the coverage he may reasonably expect to be provided under the policy. Only an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage will defeat that expectation.
>
>> . . .

---

**11.** *Motorists Mutual Insurance Co. v. Glass,* Ky., 996 S.W.2d 437, 449 (1999).

**12.** Ky., 724 S.W.2d 210, 212–13 (1986).

The doctrine of reasonable expectations is used in conjunction with the principle that ambiguities should be resolved against the drafter in order to circumvent the technical, legalistic and complex contract terms which limit benefits to the insured.

In the instant case, we hold that the exclusionary language at issue is unambiguous so that Edwards could not have reasonably expected to recover UIM benefits as a result of the accident in question. The policy issued to the Lindles by Shelter clearly stated that UIM benefits are only available for bodily injury "caused by [an] accident [ ] aris[ing] out of the ownership, maintenance or use of the underinsured motor vehicle." In addition, the policy provides that an underinsured motor vehicle does not include a vehicle "owned by or furnished or available for the regular use of you[13] or a relative." As we discussed previously, it is not disputed that (1) Wayne and Becky Lindle owned the 1995 Ford Mustang; (2) that the 1995 Ford Mustang was available for Edwards's regular use; and (3) that Edwards met the definition of a "relative." Thus, since the language at issue is clear and unambiguous, the doctrine of reasonable expectations does not apply. Accordingly, Edwards is not entitled to UIM benefits under the policy issued by Shelter to the Lindles, and the trial court did not err by granting Shelter's motion for summary judgment.

Based on the foregoing, the order of the Jefferson Circuit Court is affirmed.

ALL CONCUR.

---

**13.** "[Y]ou" is defined as "the insured named in the Declarations and spouse," *i.e.,* Wayne and Becky Lindle.