PEABODY PAINTING & WATER-
PROOFING, INC., Appel-
lant/Cross–Appellee,

v.

KENTUCKY EMPLOYERS' MUTUAL
INSURANCE COMPANY,
Appellee/Cross–Appellant.

and

Fusting Insurance Agency,
LLC, Appellant,

v.

Kentucky Employers' Mutual
Insurance Company,
Appellee.

Nos. 2008–CA–001914–MR, 2008–
CA–001971–MR, 2008–CA–
001940–MR.

Court of Appeals of Kentucky.

Dec. 29, 2010.

Kristie Babbitt Walker, Gregory L. Smith, Louisville, KY, for appellant, Peabody Painting & Waterproofing, Inc.

Katherine S. Dozier, Richard P. Schiller, Louisville, KY, for appellant, Fusting Insurance Agency, LLC.

John W. Walters, Sarah E. Noble, Lexington, KY, for appellee.

Before TAYLOR, Chief Judge; CLAYTON and THOMPSON, Judges.

## OPINION

THOMPSON, Judge:

This case involves a workers' compensation insurance coverage claim between Peabody Painting & Waterproofing, Inc. and Kentucky Employers' Mutual Insurance Company (KEMI), and Fusting Insurance Agency's claim that it is entitled to indemnity from KEMI.

The Jefferson Circuit Court granted KEMI's motion for summary judgment on the basis that the KEMI policy did not provide extraterritorial coverage for a Peabody employee injured in Louisiana. It subsequently denied summary judgment to Fusting Insurance Agency, finding that material issues of fact existed as to wheth-

er the agency owed a duty to Peabody and, if so, whether it breached that duty. After Fusting Insurance Agency filed a cross-claim against KEMI seeking indemnification, KEMI filed a motion to dismiss Fusting Insurance Agency's cross-claim, which was granted. Peabody appealed the summary judgment granted to KEMI and KEMI filed a protective cross-appeal. Fusting Insurance Agency appealed the order dismissing its cross-claim against KEMI.

Peabody is a commercial painting company founded in May 2001 by Florida resident Kevin Smither and was incorporated in that state. Peabody contracts to paint fast food restaurants throughout the United States and, consequently, its painters do not have a "home base" and travel in company vehicles.

Initially, Smither operated the company from his home. Later, he opened a small sales office and warehouse space in Florida. He obtained workers' compensation insurance as well as other insurance in Florida. In 2001, Smither decided to locate the company in Kentucky and hired Robert Cripe as the Chief Financial Officer of Peabody.

Cripe opened an office in Louisville and obtained a certificate for Peabody to do business in Kentucky. Among his duties, Cripe was to obtain workers' compensation insurance from a Kentucky insurance agent to replace the Florida policy. He contacted Donald Fusting of Fusting Insurance Agency, a licensed independent insurance agent. Cripe provided Fusting a list of all states in which Peabody's painters worked.

After Fusting recommended that Peabody obtain insurance through KEMI, Cripe completed an insurance application for workers' compensation insurance through KEMI. In the portion of the application requesting information of the states

for which coverage was sought, the words "All States" appeared. Fusting testified that the "All States" designation was a default setting on his computer for that field and that he and Cripe did not discuss the "All States" designation. However, the application stated that Peabody had coverage in another state, that the main office was in Louisville, and the company had a sales office and warehouse in Florida. In addition, the application indicated that Peabody employees traveled out of state.

At the time the Peabody policy was written, KEMI did not offer workers' compensation insurance coverage for losses occurring in any state other than Kentucky. Thus, upon receiving the Peabody application and noting that Peabody had operations in Florida and employees that worked outside Kentucky, KEMI's underwriting supervisor, Mary Ross, contacted Fusting by telephone and informed him that KEMI's workers' compensation policy only covered Kentucky exposures. KEMI underwriter Dan Feigle followed Ross's contact with a fax to Fusting on February 22, 2002, informing him that "KEMI will only cover KY exposures and cannot offer coverage to any employees outside the state of KY." On March 13, 2002, he sent a letter wherein he stated:

> KEMI is not authorized to provide Workers' Compensation benefits in any other state than Kentucky. Accordingly, the workers' compensation policy issued to our policyholder, Peabody Painting and Waterproofing, does not provide coverage in other states.

The policy issued to Peabody also states that its terms applied only to the "Workers' Compensation laws of the Commonwealth of Kentucky" and "provided no coverage for benefits under the workers' compensation laws of any other state."

After the KEMI policy was issued, in August 2002, an investigator from the Florida Division of Workers' Compensation visited Peabody's Florida office seeking information concerning Peabody's workers' compensation coverage for Florida employees and was concerned that the KEMI policy did not cover those workers. A conference call occurred between Smither, Cripe, Fusting, and the investigator after which the investigator issued a "Stop Work and Penalty Assessment Order" to Peabody requiring it to cease all business operations until it provided proof that it had workers' compensation insurance for Florida workers, and Peabody was fined $1,100. Instead of ceasing its operations, Peabody alleges that it relied on Fusting's advice that the coverage was afforded under the KEMI policy.

Bogdan Klepadlo, a Florida resident, was hired in April 2002. Klepadlo interviewed in Florida with Smither and completed an application. Because Klepadlo had been recommended by current Peabody employees, his interview was brief. Following the interview, Smither faxed Klepadlo's application and his driver's license to Cripe in Kentucky.

Cripe's only involvement in the hiring process was to verify the authenticity of Klepadlo's driver's license and set up a direct deposit to receive compensation from Peabody. Smither testified that the decision to hire Klepadlo was made when the application was sent to Cripe and that the application was only a formality. After Cripe reviewed the application and checked Klepadlo's driver's license, Smither informed Klepadlo in Florida that he had been hired and Klepadlo accepted the offer in Florida.

While working for Peabody, Klepadlo worked approximately eighty-four painting jobs, fifty-two of which were in Florida. He received all work assignments in Florida and his wages were directly deposited from Peabody's Florida bank account into Klepadlo's Florida bank account.

Klepadlo was injured on February 10, 2003, while working for Peabody in Louisiana. Peabody informed KEMI of Klepadlo's injuries on February 12, 2003. After collecting further information concerning the claim, on March 4, 2003, KEMI denied the claim and, the following day, the Kentucky Department of Workers Claims sent a letter to Klepadlo informing him of his rights relative to the denial.

Klepadlo did not file a Kentucky workers' compensation claim but filed a claim in Florida. Peabody hired Florida counsel to defend it in the proceeding and did not pursue a claim for coverage against KEMI. In a settlement hearing in August 2005, Peabody agreed to pay certain amounts to Klepadlo and agreed that the Florida Judge of Compensation Claims would retain jurisdiction.

Peabody filed an action against Fusting on October 13, 2002, alleging that Fusting was negligent in obtaining an insurance policy that did not provide coverage for workers' compensation injuries incurred outside Kentucky. Subsequently, Peabody amended its complaint wherein it asserted that KEMI wrongfully denied coverage, bad faith, violation of the Kentucky Consumer Protection Act and the Unfair Claims Settlement Practices Act, and violation of Kentucky Revised Statutes (KRS) 304.12–235.

Peabody filed motions for summary judgment against Fusting and KEMI and KEMI filed a motion for summary judgment on all claims asserted against it. Fusting filed a cross-motion for summary judgment against Peabody. The circuit court denied the motions filed by Peabody and Fusting but concluded that the denial

of coverage by KEMI was proper and granted summary judgment to KEMI.

Interpretation of an insurance policy is a question of law which we review *de novo. Cinelli v. Ward,* 997 S.W.2d 474 (Ky.App. 1998). The applicable rules of construction were summarized in *Goodman v. Horace Mann Ins. Co.,* 100 S.W.3d 769, 772 (Ky.App.2003):

> [I]n this state doubts concerning the meaning of contracts of insurance are resolved in favor of the insured. *State Auto. Mutual Ins. Co. v. Ellis,* Ky.App., 700 S.W.2d 801, 803 (1985). But, in the absence of ambiguities or of a statute to the contrary, the terms of an insurance policy will be enforced as drawn. *Osborne v. Unigard Indemnity Co.,* Ky. App., 719 S.W.2d 737, 740 (1986); *Woodard v. Calvert Fire Ins. Co.,* Ky., 239 S.W.2d 267, 269 (1951). Unless the terms contained in an insurance policy have acquired a technical meaning in law, they "must be interpreted according to the usage of the average man and as they would be read and understood by him in the light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the insured." *Fryman v. Pilot Life Ins. Co.,* Ky., 704 S.W.2d 205, 206 (1986).

Because we conclude that the terms of the KEMI policy are unambiguous, we must enforce the policy as written without application of alternative rules of construction. *Edwards v. Carlisle,* 179 S.W.3d 257, 261 (Ky.App.2004).

 The policy states that "[T]his policy covers all your workplaces in the Commonwealth of Kentucky . . . ;" On the following page the policy states that the policy applies to bodily injury by accident or occupational disease to an employee if the employment is "necessary or incidental to your work in Kentucky." Finally, under the extraterritorial coverage provision,

it unambiguously and conspicuously states that: "This policy provides coverage for benefits as provided by the extraterritorial provisions of the Workers' Compensation Law."

Klepadlo was injured outside Kentucky and was a Florida resident who had never performed work in Kentucky on Peabody's behalf. Thus, in accordance with the policy, Klepadlo could be covered by the policy only if the extraterritorial coverage provisions provided by Kentucky law apply.

The circumstances in which extraterritorial coverage applies are set forth in KRS 342.670. In relevant part, the statute states:

> (1) If an employee, while working outside the territorial limits of this state, suffers an injury on account of which the employee, or in the event of the employee's death, his or her dependents, would have been entitled to the benefits provided by this chapter had that injury occurred within this state, that employee, or in the event of the employee's death resulting from that injury, his or her dependents, shall be entitled to the benefits provided by this chapter, if at the time of the injury:
>
> > (a) His or her employment is principally localized in this state; or
> >
> > (b) He or she is working under a contract of hire made in this state in employment not principally localized in any state . . . .

We conclude that Klepadlo's employment was not principally localized in Kentucky nor was he working under a contract of hire made in this state.

 For the purposes of extraterritorial coverage, "the employer must either lease or own a location in the state at which it regularly conducts its business affairs, and the subject employee must regularly work at or from that location." *Haney v. But-*

*ler,* 990 S.W.2d 611, 617 (Ky.1999). Klepadlo received his work orders from the Florida office and had no interaction with the Kentucky office. During his Peabody employment, Klepadlo was a Florida resident and the majority of his work assignments were in Florida. Therefore, his employment was not principally located in Kentucky.

■ Pursuant to KRS 342.670(1)(b), coverage is available if the employee "is working under a contract of hire made in this state." A contract is made in this state if the final act necessary for its formation occurs in this state. *Trinity Universal Ins. Co. v. Mills,* 293 Ky. 463, 169 S.W.2d 311, 314 (1943). We agree with KEMI's argument that the contract of hire was made in Florida and, therefore, the extraterritorial provision in KRS 342.670(1)(b) does not apply.

Other than a routine check of his driver's license by Cripe, no Peabody representative in Kentucky had contact with Klepadlo or any participation in his hiring. All conversations between Klepadlo and representatives of Peabody occurred in Florida. He completed the application in Florida and spoke with Smither in Florida. Most determinative, the offer of employment and Klepadlo's acceptance of employment occurred in Florida. Therefore, Klepadlo's contract of hire was made in Florida, and the extraterritorial coverage provisions of Kentucky law do not apply.

■ Peabody argues that even if the policy and Kentucky law do not provide coverage for Klepadlo's injury, KEMI is estopped from denying coverage. It argues that KEMI never directly informed it that there was no out-of-state coverage and accepted premiums. It points out that after Klepadlo's claim, KEMI audited Peabody and provided a refund for premiums paid for workers' compensation benefits KEMI determined to be on Florida employees.

It has been stated that "it is a just rule that the insurance company, when it accepts the insured's money for the premium, knows the facts rendering the policy void, the company so taking the money of the insured is estopped to say that the policy had no operation at all." *Glens Falls Ins. Co. v. Elliott,* 223 Ky. 205, 3 S.W.2d 219, 221 (1928). Peabody contends that it paid a premium for workers' compensation insurance but received no benefit and, therefore, KEMI is estopped from denying coverage.

Peabody ignores that KEMI does not deny that the policy provides workers' compensation coverage for qualifying employees; thus, this is not a situation where Peabody has paid premiums but received no coverage. Moreover, the elements of estoppel simply are not present.

■■ Estoppel is an equitable doctrine and is available when a party offers a false representation or conceals information that reasonably induces an injured party's inaction. In order for estoppel to apply, the party estopped must have acted with the intention or expectation that the other party will rely on its conduct and the other party does so to its determent. *Hitachi Automotive Products USA, Inc. v. Craig,* 279 S.W.3d 123, 126 (Ky.2008).

Upon receipt of Peabody's application for insurance, the KEMI underwriting supervisor informed Peabody's insurance agent that the policy did not offer out-of-state coverage. Additional correspondence between KEMI and Fusting stressed that only Kentucky exposures and employees were covered under the policy and the policy unambiguously stated the same limitations. Moreover, certainly when the Florida Division of Workers' Claims inspector issued a stop work order for the company upon finding that the

KEMI policy did not cover Florida employees, Peabody knew it lacked coverage for employees such as Klepadlo. Therefore, estoppel is not applicable.

■ Because KEMI cannot be liable to Peabody under any theory alleged in the complaint, Fusting's claim for indemnification must fail. "[B]oth indemnity and contribution depend upon liability by one or both parties to the original claimant who suffered the original loss. Without such liability, there is no independent right to indemnity or contribution." *ARA Services, Inc. v. Pineville Community Hosp.*, 2 S.W.3d 104, 107 (Ky.App.1999). Because KEMI cannot be held liable to Peabody, it does not have an independent right to indemnity; thus, its cross-claim for indemnification was properly dismissed.

All other issues presented are rendered moot by our conclusion that KEMI has no liability.

Based on the foregoing, the judgments of the Jefferson Circuit Court are affirmed.

ALL CONCUR.