**KENTUCKY EMPLOYERS' MUTUAL INSURANCE, Appellant**

v.

**Fred BURNETT; Deck Doktor, Inc.; Hon. R. Scott Borders, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

and

**Deck Doktor, Inc., Appellant**

v.

**Fred Burnett; Kentucky Employers' Mutual Insurance; Hon. R. Scott Borders, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

**Nos. 2013–CA–001834–WC, 2013–CA–001843–WC.**

Court of Appeals of Kentucky.

May 16, 2014.

W. Barry Lewis Hazard, KY, for appellant, Kentucky Employers' Mutual Insurance.

Lyn Douglas Powers, Louisville, KY, for appellant, Deck Doktor, Inc.

Paul A. Brizendine, Jeffersonville, IN, for appellee, Fred Burnett.

Before LAMBERT, STUMBO, and THOMPSON, Judges.

## OPINION

THOMPSON, Judge:

Kentucky Employers' Mutual Insurance (KEMI) and Deck Doktor, Inc. filed separate petitions for review of the opinion of the Workers' Compensation Board affirming the Administrative Law Judge's (ALJ) decision awarding Fred Burnett permanent total disability (PTD) benefits. KEMI argues Kentucky does not have jurisdiction to adjudicate Burnett's claim and Deck Doktor contests the award of PTD benefits. We affirm.

Burnett filed a Form 101 Application for Resolution of Injury Claim seeking benefits as a result of his work injury sustained on September 29, 2011. Deck Doktor, through KEMI under a reservation of rights, denied the claim, and KEMI intervened as a defendant to assert that Kentucky did not have jurisdiction and there was no coverage for Burnett's claims under the workers' compensation policy issued to Deck Doktor. KEMI later filed a Certificate of Authority from the Secretary of State's Office providing Deck Doktor with the authority to transact business in Kentucky as an entity organized in Indiana with a principal place of business in New Albany, Indiana.

Burnett is currently a forty-two-year-old resident of Crandall, Indiana. He is a high school graduate and attended a business college but did not complete his coursework. Burnett served in the Army and completed his last tour in 1995. Burnett had several jobs prior to becoming employed by Deck Doktor in 2009, including work at Tafel Motors in the parts department, in a sales job, building elevators, and he worked as a property manager. He also worked as an apprentice electrician and at his family's business as a manager.

Burnett began working for Deck Doktor in 2009, where he worked until the date of his work injury. Burnett testified that in February 2009, James David Stillwell, the owner of Deck Doktor, called him while at home in Indiana and asked Burnett to help with a job in Kentucky. Burnett agreed. Burnett testified that the day after completing the Kentucky job, Stillwell and he had dinner at Hometown Pizza, in LaGrange, Kentucky, and, while there, Stillwell offered him full-time employment, which he accepted. Burnett earned $15 per hour and was paid by check on a weekly basis through an Indiana branch of Chase Bank. He received a 1099 at the end of the tax year. Burnett worked in both Kentucky and Indiana but testified 90% of his work was performed in Kentucky.

On the date of his injury, Burnett fell from a roof while he was working on a log cabin in New Albany, Indiana. Burnett injured both heels and was taken to Floyd Memorial Hospital where he was treated by Dr. John Conner. Dr. Conner later performed surgery and Burnett last saw Dr. Conner on March 12, 2012.

Burnett testified that because of his physical limitations, he has not worked since the date of his injury. Burnett stated he cannot wear shoes for more than an hour before his feet hurt and walking causes knee pain. He stated he can stand comfortably for an hour and walk comfortably for a distance of about 100 feet. While working at Deck Doktor, Burnett spent the day almost entirely on his feet performing manual labor. Presently, Burnett's daily activities consist of house

cleaning, caring for his dogs, cooking, doing laundry and reading.

Stillwell testified he organized Deck Doktor in 2000 in Kentucky. He described Deck Doktor as a mobile business, relying mostly on his cell phone to conduct business and he does not have a formal office. Burnett previously performed contract work for Deck Doktor on two occasions in June 2004 and July 2008. In February 2009, Stillwell requested him to work on a job in LaGrange. He confirmed after the LaGrange job was completed in February 2009, the two met at the Hometown Pizza in Kentucky and negotiated the terms, conditions, pay rate, and hours for Burnett's full-time employment with Deck Doktor. Stillwell testified Deck Doktor does not have workers' compensation insurance in Indiana.

Burnett filed the medical records of several providers. Floyd Memorial Hospital records detailed his treatment in the emergency room after the fall and included a CT scan and x-ray reports showing bilateral heel fractures. Burnett was discharged on October 1, 2011, and returned later that month for surgery on his left heel. His right heel was treated non-operatively.

Burnett also filed the medical records and progress notes of Dr. John Conner, his treating physician at Floyd Memorial Hospital. The last progress note was dated March 12, 2012, and indicated Burnett's fractured heels were improved. Dr. Conner explained that maximum recovery would take eighteen months and Burnett could work in a job where he was mostly sitting.

In addition, Burnett filed the medical report of Dr. Jules Barefoot. Dr. Barefoot performed an independent medical examination (IME) on October 10, 2012, which included a review of Burnett's medical records. Based upon his examination and review, Dr. Barefoot diagnosed Burnett with bilateral heel fractures and status post-open reduction and internal fixation of a severely comminuted left heel fracture caused by Burnett's work injury.

He opined Burnett sustained a permanent, partial functional impairment to the whole body of 4% based upon the *AMA Guides*. Dr. Barefoot described several restrictions, noting Burnett would have marked difficulty with prolonged standing or walking. He would not be able to work on ladders or scaffolding, and would have difficulty going up and down stairs, operating machinery with foot controls, or lifting and carrying heavy loads over an extended distance. Burnett would need ongoing orthopedic care for his injuries and possibly require future surgery. He was at risk for developing premature degenerative osteoarthritis in his feet and ankles due to his work injury. Burnett had reached maximum medical improvement (MMI). Later, Dr. Barefoot had the opportunity to review an IME report by Dr. Thomas Loeb and based upon this new information, Dr. Barefoot changed Burnett's whole body impairment rating to 21%, attributable to his work-related injury.

Deck Doktor filed the medical report of Dr. Loeb, who performed an IME on October 23, 2012. Dr. Loeb performed an examination and reviewed Burnett's medical records. He diagnosed post bilateral os calcis fractures with intra-articular components, healed, with persistent heel pain secondary to his work injury. Dr. Loeb assigned a 19% whole body impairment pursuant to the *AMA Guides*. Dr. Loeb stated a brace would benefit Burnett and may permit his return to some type of work.

The benefit review conference (BRC) was held on October 31, 2012. Contested issues remained regarding benefits per Kentucky Revised Statutes (KRS) 342.730,

work-relatedness/causation, average weekly wage, unpaid or contested medical expenses, and temporary total disability benefits (TTD). A final hearing was held on January 18, 2013.

Burnett requested TTD benefits from September 29, 2011, through October 10, 2012; permanent partial disability (PPD) benefits based upon Dr. Barefoot's 21% whole body impairment rating; payment of reasonable medical expenses; and any and all benefits to which he was entitled pursuant to the proof. KEMI argued Burnett's claim should be dismissed based upon Kentucky's lack of jurisdiction because the contract for hire was made in Indiana, not Kentucky. Deck Doktor argued that if the ALJ found the claim to be compensable, Burnett should be awarded TTD benefits until March 12, 2012, and PPD benefits based upon Dr. Barefoot's original 4% impairment rating.

■ The ALJ found Burnett and Stillwell entered into a contract of hire during their dinner at Hometown Pizza in La-Grange, Kentucky. The ALJ also found the employment was not principally localized in any state based upon Stillwell's testimony that his business does not have an office location in Indiana or Kentucky and his description of it as a mobile business operated using his cell phone. In addition, the ALJ noted the majority of Burnett's work was performed in Kentucky. The ALJ concluded Burnett's claim fell under the extraterritorial coverage provision of KRS 342.670(1)(b).

The ALJ then addressed the issues of causation, average weekly wage, medical expenses, and TTD benefits. The ALJ found Dr. Loeb's 19% functional impairment rating persuasive. While recognizing Burnett only requested PPD benefits, considering the factors set forth in *Osborne v. Johnson*, 432 S.W.2d 800 (Ky. 1968), the ALJ found as follows:

In this instance, the Plaintiff is 42 years of age, and has worked primarily as a general laborer with the exception of two tours in the U.S. Army and some minor supervisory jobs. According to Dr. Barefoot, Mr. Burnett would have difficulty with prolonged standing or walking and is not able to work on ladders or scaffolding. He had difficulty with prolonged standing or walking and is not able to work on ladders or scaffolding. He had difficulty climbing and descending stairs, as well as operating machinery with foot controls and would have difficulty lifting and carrying heavy loads over extended distances.

Mr. Burnett testified, quite credibly, that he continues to have pain in both heels, his left worse than his right and he has difficulty with his balance. He testified that throughout the day if he does any physical activity, his ankles are swollen and his legs are swollen up to the middle of his calf. Mr. Burnett testified he understands his restrictions to be that he is not allowed to basically do anything that he was doing before such as heavy lifting for an extended period of time or being on a ladder or in situations where his balance is compromised. The last time he spoke with Dr. Conner he was released to nothing but sit down work.

In this specific instance, when you compare the Plaintiff's present situation to the principles announced by the Supreme Court in *Osborne vs. Johnson*, Supra., [sic] the Administrative Law Judge finds that the Plaintiff is permanently and totally occupationally disabled as a result of the September 29, 2011, work-related bilateral heel fractures. In so determining, the Administrative Law Judge believes that the likelihood that Mr. Burnett will be able to find work consistently under normal em-

ployment conditions with his current limitations and chronic pain is highly unlikely.

The ALJ awarded PTD benefits at a rate of $190.49 per week commencing September 30, 2011, and reasonable medical expenses.

KEMI filed a petition for reconsideration, disputing the ALJ's finding that the contract of hire was made in Kentucky. Deck Doktor also filed a petition for reconsideration, arguing that the ALJ erred in awarding PTD benefits because Burnett did not request an award of PTD benefits and the evidence did not establish Burnett was incapable of performing any work. The ALJ denied both petitions and KEMI and Deck Doktor appealed. The Board affirmed and these petitions for review by KEMI and Deck Doktor followed.

"[A]s the fact-finder, the ALJ, not this Court and not the Board, has sole discretion to determine the quality, character, and substance of the evidence." *Abbott Laboratories v. Smith,* 205 S.W.3d 249, 253 (Ky.App.2006). This Court may reverse the Board's decision only when it has "overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hosp. v. Kelly,* 827 S.W.2d 685, 687–688 (Ky.1992).

Kentucky law is well-settled that "[t]he claimant in a workman's compensation case has the burden of proof and the risk of persuading the board in his favor." *Snawder v. Stice,* 576 S.W.2d 276, 279 (Ky.App.1979). "When the decision of the fact-finder favors the person with the burden of proof, his only burden on appeal is to show that there was some evidence of substance to support the finding, meaning evidence which would permit a fact-finder to reasonably find as it did." *Special*

*Fund v. Francis,* 708 S.W.2d 641, 643 (Ky. 1986).

We first consider KEMI's contention that Kentucky does not have jurisdiction to adjudicate Burnett's claim. KRS 342.670(1) provides for Kentucky's jurisdiction in workers' compensation claims for injuries occurring outside of Kentucky in the following circumstances:

If an employee, while working outside the territorial limits of this state, suffers an injury on account of which the employee, or in the event of the employee's death, his or her dependents, would have been entitled to the benefits provided by this chapter had that injury occurred within this state, that employee, or in the event of the employee's death resulting from that injury, his or her dependents, shall be entitled to the benefits provided by this chapter, if at the time of the injury:

(a) His or her employment is principally localized in this state; or

(b) He or she is working under a contract of hire made in this state in employment not principally localized in any state; or

(c) He or she is working under a contract of hire made in this state in employment principally localized in another state whose workers' compensation law is not applicable to his or her employer; or

(d) He or she is working under a contract of hire made in this state for employment outside the United States and Canada.

Under the first prong of KRS 342.670(1)(b), coverage is available if the employee is working under a contract of hire made in this state. "A contract is made in this state if the final act necessary for its formation occurs in this state." *Peabody Painting & Waterproofing, Inc. v. Kentucky Employers' Mutual Ins. Co.,*

329 S.W.3d 684, 689 (Ky.App.2010). KEMI argues Deck Doktor and Burnett entered into a contract for hire during the February 2009 telephone call Stillwell made to Burnett while at his Indiana residence. However, the record establishes that at the time Stillwell asked only for Burnett's temporary help with a job, as he had on two previous occasions in 2004 and 2008. Burnett and Stillwell did not enter into a contract of hire until they discussed Burnett's full-time permanent employment during dinner at Hometown Pizza in LaGrange, Kentucky. Therefore, we hold substantial evidence of record supports the ALJ's finding that the contract of hire was entered into in Kentucky, not Indiana.

For purposes of extraterritorial jurisdiction and the two-prong test of KRS 342.670(1)(b), we must also review the ALJ's finding that Burnett's employment was not principally localized in any state. "Principally localized" is defined in KRS 342.670(5):

> As used in this section:
>
> . . . .
>
> (d) A person's employment is principally localized in this or another state when:
>
> 1. His or her employer has a place of business in this or the other state and he or she regularly works at or from that place of business, or
>
> 2. If subparagraph 1. foregoing is not applicable, he or she is domiciled and spends a substantial part of his or her working time in the service of his or her employer in this or the other state[.]

In *Haney v. Butler,* 990 S.W.2d 611 (Ky. 1999), the Court construed the term "has a place of business" as used in the extraterritorial coverage provision to mean "the employer must either lease or own a location in the state at which it regularly conducts its business affairs, and the subject employee must regularly work at or from that location." *Id.* at 617.

Stillwell testified Deck Doktor did not have a place of business in Kentucky or Indiana and he conducted his business in his truck or restaurants using a cell phone. Stillwell had no formal place of business.

Likewise, Burnett testified 90% of his work was performed in Kentucky, excluding application of KRS 342.670(5)(d)2. Therefore, we hold the ALJ did not misconstrue any controlling statutes or case law and properly determined extraterritorial jurisdiction applied.

Having affirmed the Board's decision on KEMI's jurisdictional challenge, we address Deck Doktor's argument Burnett is not entitled to PTD. Burnett argues the issue of his level of permanent disability—either partial or total—was preserved at the BRC when "benefits per KRS 342.730" was identified as a contested issue and the ALJ's award is supported by substantial evidence.

We agree the ALJ was not precluded from awarding PTD benefits because Burnett only requested PPD benefits. While such a result is unusual, the award and type of permanent disability benefits to which he was entitled was sufficiently preserved at the BRC through the contested issue of "benefits per KRS 342.730."

We also conclude the ALJ's award was based on substantial evidence. In KRS 342.0011(11)(c), the General Assembly provided definitions for PTD:

> "Permanent total disability" means the condition of an employee who, due to an injury, has a permanent disability rating and has a complete and permanent inability to perform any type of work as a result of an injury[.]

In *Ira A. Watson Dept. Store v. Hamilton,* 34 S.W.3d 48 (Ky.2000), the Supreme Court of Kentucky addressed whether un-

der the post–1996 KRS 342.0011(11), the ALJ could properly consider the factors set forth in *Osborne.* The Court stated that while the ALJ has little discretion with regard to determining the extent of an injured worker's PPD, the *Osborne* factors remain proper considerations for an award of PTD benefits.

An analysis of the factors set forth in KRS 342.0011(11)(b), (11)(c), and (34) clearly requires an individualized determination of what the worker is and is not able to do after recovering from the work injury. Consistent with *Osborne v. Johnson, supra,* it necessarily includes a consideration of factors such as the worker's post-injury physical, emotional, intellectual, and vocational status and how those factors interact. It also includes a consideration of the likelihood that the particular worker would be able to find work consistently under normal employment conditions. A worker's ability to do so is affected by factors such as whether the individual will be able to work dependably and whether the worker's physical restrictions will interfere with vocational capabilities. The definition of "work" clearly contemplates that a worker is not required to be homebound in order to be found to be totally occupationally disabled.

*Hamilton,* 34 S.W.3d at 51. The Court reaffirmed that when considering PTD benefits the statutory amendments did not diminish the ALJ's role as fact-finder and its discretion remained "to translate the lay and medical evidence into a finding of occupational disability." *Id.* at 52. The role of the ALJ post–1996 was further reconfirmed in *Transportation Cabinet v.*

*Poe,* 69 S.W.3d 60, 63 (Ky.2001), when the Court reiterated: "Although the ALJ has very limited discretion when determining the extent of a worker's permanent partial disability, total disability assessments are not so strictly limited."

We conclude there was substantial evidence to support the ALJ's award of PTD benefits. Drs. Loeb and Barefoot opined that Burnett has significant restrictions on walking and standing; using ladders, scaffolding, or stairs; and lifting and carrying heavy loads over long distances and cannot return to his employment with Deck Doktor. Both physicians assigned permanent impairment ratings. Although Burnett completed some coursework after high school, his recent work history consists of jobs requiring him to stand, climb and lift. While there is evidence to support a contrary conclusion than that reached by the ALJ, such evidence is not a basis to usurp the ALJ's discretion in awarding PTD benefits. *McCloud v. Beth–Elkhorn Corp.,* 514 S.W.2d 46 (Ky. 1974).

For the foregoing reasons, the opinion of the Workers' Compensation Board is affirmed.

STUMBO, Judge, concurs.

LAMBERT, Judge, concurs in result only.